2006 ND 68

**Linda VICTOR, Claimant and Appellant**

v.

**WORKFORCE SAFETY & INSURANCE, Appellee**

and

**Best Pet, Respondent.**

**Linda Victor, Claimant**

v.

**Workforce Safety & Insurance, Appellee**

and

**Best Pet, Respondent and Appellant.**

**Nos. 20050384, 20050400.**

Supreme Court of North Dakota.

March 29, 2006.

Stephen D. Little (argued) of Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Lawrence E. King (argued), Special Assistant Attorney General, Bismarck, N.D., for appellee.

Ronald Roberts (argued), pro se, Minot, N.D., respondent and appellant.

MARING, Justice.

[¶ 1]   Linda Victor and Best Pet appeal from a trial court's judgment affirming an order of Workforce Safety and Insurance ("WSI") denying Victor further disability and vocational rehabilitation benefits.  We

affirm because a reasoning mind could reasonably decide that the weight of the evidence supports WSI's decision.

I

[¶2] On June 24, 1999, Linda Victor was hurt while working as a dog groomer at Best Pet, a Minot animal grooming and boarding business owned by Ronald Roberts, Victor's father. Victor has worked for Best Pet since 1984, with a one-year absence in 1989.

[¶3] Following her injury, Victor filed a claim for temporary partial disability benefits with WSI. Initially, WSI denied Victor's claim, but accepted it following a July 2000 evidentiary hearing and the recommendation of an Administrative Law Judge ("ALJ") to revoke the dismissal. In October 2000, WSI issued an order denying Victor further benefits and, in July 2001, an evidentiary hearing was held on Victor's appeal of the WSI order. The ALJ again recommended reversing WSI's order, but WSI chose to affirm its decision denying Victor benefits. Victor appealed to the trial court in January 2002 and, in May, the trial court issued a memorandum opinion reversing WSI's order denying benefits and remanding to WSI for further consideration. WSI petitioned the trial court for further reconsideration and the trial court denied WSI's petition.

[¶4] Following the trial court's decision, WSI proceeded to conduct a job site assessment at Best Pet to assess the tasks required by Victor's job as a dog groomer. The assessment placed her in a light job classification on a full-time basis and stated that, while she could likely continue to groom small dogs, she did not have the ability to handle large dogs. As a result, WSI concluded that the first appropriate rehabilitation option for Victor was to seek a different job in the local job pool. WSI stated that Victor had the skills and ability to work as a customer service representative, admitting clerk, receptionist, telemarketer, or phlebotomist.

[¶5] After Victor's assessment by WSI, Victor reported her capacity to work was further reduced. Victor went to see several local doctors before requesting WSI's approval of a referral to a Minneapolis neurosurgeon, Dr. Manuel Pinto. WSI denied Victor's referral request because Dr. Mohamed Kahn, who WSI no longer considered to be Victor's treating physician, made the request. The referral was later approved after the doctor WSI considered to be Victor's treating physician, Dr. Yuanhui Zhang, made the referral.

[¶6] In June 2003, WSI issued Victor a notice of its intention to discontinue her temporary partial disability benefits in July. WSI stated it was discontinuing benefits because Victor had transferrable skills to return to work and her projected income in another area of work would exceed her pre-injury income from Best Pet.

[¶7] In about July 2003, Dr. Pinto reported Victor was able to work part time, with restrictions. Dr. Pinto also recommended a lumbar fusion surgery that would permanently restrict Victor to a sedentary level of activity. In August 2003, Dr. Zhang reported that he did not agree with Dr. Pinto's assessment, and stated he felt the recommended surgery was unnecessary. Dr. Zhang also reported he believed that Victor was able to do at least light duty work. WSI issued an order discontinuing benefits to Victor in September 2003. Victor challenged this order. In March 2004, a hearing was held before an ALJ to determine whether WSI had identified the first appropriate rehabilitation option for Victor. In June 2004, the ALJ affirmed WSI's decision, and WSI issued a final order adopting the ALJ's recommendations.

[¶ 8]   In August 2004, Victor filed a notice of appeal and specifications of error with the trial court.  The trial court concluded that WSI had not met its burden of establishing that Victor's rehabilitation plan was appropriate and remanded to WSI for reconsideration.  The trial court also concluded Victor had not established WSI's adjudication of her case had been unfair.

[¶ 9]   Following remand, WSI's vocational consultant, who had conducted the job site assessment, met with Victor and Best Pet to determine if modifications to the workplace would be appropriate.  Specifically, the consultant considered whether a $10,000 hoist mechanism, which Victor and Best Pet proposed could be used to aid Victor in grooming large dogs, was feasible.  In its order following remand, the trial court stated that the proposed modification had "speculative probability for success" and concluded WSI had met its burden of establishing that seeking a different job was the first appropriate rehabilitation option for Victor.

[¶ 10]   On appeal, Victor and Best Pet argue the trial court erred in determining WSI had met its burden of establishing it had chosen the first appropriate rehabilitation option for Victor.

[¶ 11]   WSI argues the evidence supports a finding that installing the hoist is not appropriate or necessary in this case; WSI is not required to finance the proposed modification;  and the evidence supports WSI's finding that seeking a different job is the first appropriate rehabilitation option for Victor.

## II

[¶ 12]   Our courts have a limited role in appeals from administrative agency decisions.  Under N.D.C.C. § 28–32–46, an order of an administrative agency must be affirmed by a trial court, unless one of the following is found:

1.  The order is not in accordance with the law.

2.  The order is in violation of the constitutional rights of the appellant.

3.  The provisions of this chapter have not been complied with in the proceedings before the agency.

4.  The rules or procedure of the agency have not afforded the appellant a fair hearing.

5.  The findings of fact made by the agency are not supported by a preponderance of the evidence.

6.  The conclusions of law and order of the agency are not supported by its findings of fact.

7.  The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8.  The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

See also Amerada Hess Corp. v. State ex rel. Fong, 2005 ND 155, ¶ 5, 704 N.W.2d 8.  "On appeal from the district court's decision on an administrative appeal, this Court reviews the agency order in the same manner."  Rojas v. Workforce Safety & Ins., 2005 ND 147, ¶ 10, 703 N.W.2d 299 (citing N.D.C.C. § 28–32–49).

We exercise restraint in deciding whether an agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency.  Rather, we decide whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evi-

dence from the entire record. Although an administrative construction of a statute by the agency administering the law is ordinarily entitled to some deference if that interpretation does not contradict clear and unambiguous statutory language, questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision.

*Houn v. Workforce Safety & Ins.*, 2005 ND 115, ¶ 4, 698 N.W.2d 271 (citations omitted).

## A

[¶ 13] Victor argues it was error for WSI to accept the opinion of Dr. Zhang regarding Victor's ability to work instead of the opinion of Dr. Pinto. In July 2003, Dr. Pinto stated he believed Victor was a reasonable candidate for surgery; with surgery she would be able to return to a full-time position at a sedentary level of activity; and, in her current condition, she could work only part time. In an August 8, 2003, letter to WSI Claims Analyst Gary Leer, Dr. Zhang stated he disagreed with Dr. Pinto's assessment; believed that Victor was able to do at least light duty work; and surgery was unnecessary. Weighing the opinions of the two doctors, the ALJ stated:

> Dr. Pinto's opinion that Ms. Victor can only perform sedentary to light duty work four hours per day is not persuasive. Ms. Victor was referred to Dr. Pinto at her insistence and only for the purpose of a second opinion. No doctor initiated the referral or deemed it necessary. Dr. Pinto found nothing that hadn't already been found. He evaluated Ms. Victor for surgery because Ms. Victor was interested in surgery. He found Ms. Victor to be a reasonable candidate for back fusion surgery that no other doctor thought was a good idea. Dr. Pinto's opinion is not supported by

the [Functional Capacity Evaluation] or the Job Site Analysis and it is contrary to Dr. Zhang's statements at the time of the referral that Ms. Victor's complaints and objective functional status had not changed.

WSI adopted the ALJ's decision. Under our standard of review, we affirm if a reasoning mind could reasonably have decided the agency's findings were proven by the weight of the evidence from the entire record. In 2001, the legislature amended N.D.C.C. § 28–32–46 to require the findings of fact sufficiently address the evidence presented to the agency. *See* N.D.C.C. § 28–32–46(7); 2001 N.D. Sess. Laws ch. 296, § 3. We conclude the ALJ's finding, and the subsequent agency adoption of that finding, reflects the reasonable findings of a reasoning mind and clarifies adequately any discrepancies in the two doctors' opinions and that a reasoning mind could reasonably have decided the preponderance of the evidence supported a return to work at light duty work.

## B

[¶ 14] Victor and Best Pet argue WSI did not choose the first appropriate rehabilitation option for Victor. WSI's vocational rehabilitation responsibilities are laid out in N.D.C.C. ch. 65–05.1. As N.D.C.C. § 65–05.1–01(3) provides:

> It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs. "Substantial gainful employment" means bona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, functional capacities, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practicable and as nearly as

possible to ninety percent of the employee's average weekly earnings at the time of injury, or to sixty-six and two-thirds percent of the average weekly wage in this state on the date the rehabilitation consultant's report is issued under section 65–05.1–02.1, whichever is less. The purpose of defining substantial gainful employment in terms of earnings is to determine the first appropriate priority option under subsection 4 which meets this income test set out above.

WSI's various rehabilitation options are explained at N.D.C.C. § 65–05.1–01(4), as follows:

> The first appropriate option among the following, calculated to return the employee to substantial gainful employment, must be chosen for the employee:
>
> a. Return to the same position.
>
> b. Return to the same occupation, any employer.
>
> c. Return to a modified position.
>
> d. Return to a modified or alternative occupation, any employer.
>
> e. Return to an occupation within the local job pool of the locale in which the claimant was living at the date of injury or of the employee's current address which is suited to the employee's education, experience, and marketable skills.
>
> . . . .

WSI concluded subdivision (e) was the first appropriate rehabilitation option, based on Victor's abilities. Victor argues that a workplace modification, specifically the installation of a hoist mechanism, would allow her to groom large dogs and thus return full time to Best Pet. Therefore, Victor and Best Pet argue subdivision (c), N.D.C.C. § 65–05.1–01(4), is the first appropriate rehabilitation option.

[¶ 15] We do not agree. The evidence in the record supports that merely eliminating the need to lift large dogs would not necessarily allow Victor to perform the full duties of a groomer at Best Pet. The Job Site Assessment for Victor's job at Best Pet establishes the position also requires an employee be able to bend, stand, and sit for extended periods. Victor's Functional Capacity Evaluation shows that she is unable to perform those tasks to the extent required. A reasoning mind could reasonably conclude the preponderance of the evidence established it is unlikely Victor could fully perform her pre-injury job at Best Pet on a full-time basis even if the hoist were installed.

[¶ 16] Further, Best Pet has stated it will not install the hoist mechanism at its own expense. Victor and Best Pet's argument that N.D.C.C. § 65–05.1–02(5) requires WSI to pay for the hoist mechanism is unpersuasive. Rehabilitative services under N.D.C.C. § 65–01–02(28) (1997),[1] provides for:

> [N]onmedical services reasonably necessary to restore a disabled employee to substantial gainful employment as defined by section 65–05.1–01 as near as possible. The term may include vocational evaluation, counseling, education, workplace modification, and vocational retraining including on-the-job training or training for alternative employment with the same employer, and job placement assistance.

WSI has discretion in determining what rehabilitative services are reasonably necessary. In this case, neither Victor nor Best Pet could point to any instance of a hoist mechanism, such as that proposed,

---

1. That definition is now codified at N.D.C.C. § 65–01–02(26). 2005 N.D. Sess. Laws ch. 610, § 1.

being used in any other setting similar to a dog grooming business. A reasoning mind could reasonably conclude, as WSI did, that the potential for re-injury, the proposed $10,000 cost involved, and the unproven nature of the modification, coupled with the fact that Victor's Functional Capacity Evaluation shows she still would not be able to perform all of the tasks required for the job according to the Job Site Assessment, justifies WSI's decision that the installation of the hoist mechanism is not reasonably necessary to restore Victor to substantial gainful employment. Therefore, it was not error for WSI to conclude option (e) is the first appropriate rehabilitation option.

### III

[¶ 17] A reasoning mind could reasonably decide that the weight of the evidence supports WSI's decision to rely on the opinion of Dr. Zhang over that of Dr. Pinto; its decision that the installation of a hoist mechanism at Best Pet was not reasonably necessary; and, its decision that option (e) of N.D.C.C. § 65–05.1–01(4) was the first available rehabilitation option. The trial court's judgment affirming the June 22, 2004, order of WSI is affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.