2006 ND 229

**Kelly Ray TVERBERG, Claimant and Appellant,**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee,**

and

**Delmar Rink Construction, Respondent.**

**No. 20060064.**

Supreme Court of North Dakota.

Nov. 13, 2006.

Stephen D. Little (on brief), Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Jacqueline S. Anderson (on brief), Special Assistant Attorney General, Fargo, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1] Kelly Ray Tverberg appeals from a judgment affirming a Workforce Safety and Insurance ("WSI") order that terminated an award of rehabilitation benefits to him and awarded him partial disability benefits under N.D.C.C. § 65–05.1–01(6). We conclude WSI correctly interpreted and applied the provisions for rehabilitation services in N.D.C.C. § 65–05.1–01, and we affirm.

I

[¶ 2] Tverberg sustained a work-related injury to his lower back in July 1998 while employed near Watford City as an equipment operator for a construction firm. WSI accepted Tverberg's claim for benefits and paid him associated medical and disability benefits. In 2001, WSI initiated vocational rehabilitation services for Tverberg under N.D.C.C. ch. 65–05.1 and determined his first appropriate rehabilitation option under N.D.C.C. § 65–05.1–01(4) was a 24–month retraining program at Bismarck State College. Tverberg claimed he was unable to complete that long-term rehabilitation program, in part, because he lived in Watford City, and that rehabilitation program was discontinued in the spring of 2002.

[¶ 3] After related administrative proceedings regarding Tverberg's failure to complete the retraining program at Bismarck State College, WSI reopened vocational rehabilitation services for Tverberg in 2004. WSI conducted an updated functional capacities assessment that placed Tverberg in a "Light–Medium" job classification. WSI also learned that after failing to complete the rehabilitation program at Bismarck State College in the spring of 2002, Tverberg had worked as a pipeline repairer from September 2002 through November 2003. In 2004, WSI determined Tverberg's first appropriate rehabilitation option under N.D.C.C. § 65–05.1–01(4) was long-term retraining and implemented a 24–month vocational rehabilitation program in agribusiness sales and management at Williston State College. Tverberg objected to that program and sought a part-time program that he could complete in three to five years. Although Tverberg started the program at Williston State College in August 2004, he fell behind in his assignments. WSI conducted labor market research to ascertain whether Tverberg had a retained earnings ca-

pacity for a vocational determination under N.D.C.C. § 65–05.1–01(6), and a vocational consultant identified the following six jobs for Tverberg: production assembler, fast food worker, service station attendant, cashier, sales clerk, and telephone solicitor.

[¶ 4] In October 2004, WSI issued a notice of intention to discontinue Tverberg's rehabilitation plan, informing him that rather than considering his unsatisfactory progress at Williston State College as a failure to comply with the plan, WSI would discontinue his rehabilitation benefits and pay him temporary partial disability benefits under N.D.C.C. § 65–05.1–01(6). WSI thereafter issued an order determining Tverberg's rehabilitation options would not return him to the lesser of two-thirds of the state's average weekly wage or ninety percent of his pre-injury earnings. WSI determined Tverberg had a retained earnings capacity because he was able to perform competitive gainful employment and identified the following six jobs within his physical limitations: production assembler, fast food worker, service station attendant, cashier, sales clerk, and telephone solicitor. WSI awarded Tverberg partial disability benefits for a period not to exceed five years based upon two-thirds of the difference between his pre-injury earnings and the greater of his actual wages or his retained earnings capacity of $269.60 per week.

[¶ 5] Tverberg requested a rehearing. After an administrative hearing, an administrative law judge ("ALJ") recommended affirming WSI's decision to award Tverberg partial disability benefits. WSI adopted the ALJ's recommendation, and the district court thereafter affirmed WSI's decision.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 65–10–01, and 28–32–42. Tverberg's appeal was timely un-

der *N.D.R.App.P. 4(a)* and N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

## II

[¶ 7] Courts exercise a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Victor v. Workforce Safety Ins.*, 2006 ND 68, ¶ 12, 711 N.W.2d 188. Under N.D.C.C. § 28–32–46, a district court must affirm an administrative agency order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 8] On appeal from a district court's decision in an administrative appeal, we review the agency order in the same manner. N.D.C.C. § 28–32–49; *Victor,* 2006 ND 68, ¶ 12, 711 N.W.2d 188. WSI is responsible

for weighing the credibility of witnesses and resolving conflicts in the evidence, *Grotte v. North Dakota Workers' Comp. Bureau,* 489 N.W.2d 875, 878 (N.D.1992), and we do not "make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979).

### III

[¶ 9] Tverberg challenges WSI's determination that he is employable as a production assembler, fast food worker, service station attendant, cashier, sales clerk, or telephone solicitor. He claims those jobs will not reasonably result in any retained earnings capacity because no reasonable person would leave a family and home in Watford City to look for those jobs. He asserts those jobs will not reasonably result in an adequate retained earnings capacity and he is entitled to temporary *total* disability benefits until WSI can identify a rehabilitation option under which he can reasonably replace his lost wages.

[¶ 10] WSI responds that N.D.C.C. § 65–05.1–01(6) applies when none of the rehabilitation options in N.D.C.C. § 65–05.1–01(4) are appropriate and provides a mechanism for assessing an individual's employability and entitlement to ongoing disability benefits. WSI argues N.D.C.C. § 65–05.1–01(6) is intended to determine an injured worker's retained earnings capacity for the calculation of temporary partial disability benefits and represents a legislative determination that the injured worker will be paid only partial disability benefits based on that retained earnings capacity. WSI asserts N.D.C.C. § 65–05.1–01(6) does not depend on where an injured worker resides in North Dakota and argues a reasoning mind could reasonably conclude that Tverberg has a retained earnings capacity, entitling him only to temporary partial disability benefits.

[¶ 11] Statutory interpretation is a question of law, *GO Comm. ex rel. Hale v. City of Minot,* 2005 ND 136, ¶ 9, 701 N.W.2d 865, and "[q]uestions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision." *Barnes v. Workforce Safety & Ins.,* 2003 ND 141, ¶ 9, 668 N.W.2d 290. The primary objective in interpreting a statute is to determine the legislature's intent. *Amerada Hess Corp. v. State ex rel. Tax Comm'r,* 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–03 and 1–02–38(2). We construe statutes to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4).

[¶ 12] At the time relevant to Tverberg's claim, N.D.C.C. § 65–05.1–01 authorized rehabilitation services and provided, in part:

    3. It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful

employment with a minimum of retraining, as soon as possible after an injury occurs. "Substantial gainful employment" means bona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, functional capacities, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practicable and as nearly as possible to ninety percent of the employee's average weekly earnings at the time of injury, or to sixty-six and two-thirds percent of the average weekly wage in this state on the date the rehabilitation consultant's report is issued under section 65–05.1–02.1, whichever is less. The purpose of defining substantial gainful employment in terms of earnings is to determine the first appropriate priority option under subsection 4 which meets this income test set out above.

4. The first appropriate option among the following, calculated to return the employee to substantial gainful employment, must be chosen for the employee:

a. Return to the same position.

b. Return to the same occupation, any employer.

c. Return to a modified position.

d. Return to a modified or alternative occupation, any employer.

e. Return to an occupation within the local job pool of the locale in which the claimant was living at the date of injury or of the employee's current address which is suited to the employee's education, experience, and marketable skills.

f. Return to an occupation in the statewide job pool which is suited to the employee's education, experience, and marketable skills.

g. On-the-job training.

h. Short-term retraining of fifty-two weeks or less.

i. Long-term retraining of one hundred four weeks or less.

j. Self-employment.

. . . .

6. a. If the vocational consultant concludes that none of the priority options under subsection 4 of section 65–05.1–01 are viable, and will not return the employee to the lesser of sixty-six and two-thirds percent of the average weekly wage, or ninety percent of the employee's preinjury earnings, the employee shall continue to minimize the loss of earnings capacity, to seek, obtain, and retain employment:

(1) That meets the employee's functional capacities;

(2) For which the employee meets the qualifications to compete; and

(3) That will reasonably result in retained earnings capacity equivalent to the lesser of ninety percent of the employee's preinjury earnings or the state's current hourly minimum wage on the date the rehabilitation consultant's report is issued. If an employee is initially released to part-time employment by the doctor, the income test defined under this paragraph must be waived provided there is a reasonable expectation that the employee will return to full-time employment meeting the income test previously defined under this paragraph.

b. Under section 65–05–10, the organization shall award partial disability based on retained earnings capacity calculated under this section.

[¶ 13] The rehabilitation provisions in N.D.C.C. ch. 65–05.1 are intended to return an injured employee to substantial gainful employment with a minimum of retraining as soon as possible after a work injury, but those provisions do not require complete rehabilitation to preinjury earning capacity. *Lucier v. North Dakota Workers Comp. Bureau*, 556 N.W.2d 56, 59 (N.D.1996). Section 65–05.1–01(3), N.D.C.C., defines substantial gainful employment as bona fide work that offers an opportunity to return the employee to the lesser of ninety percent of the employee's average weekly earnings at the time of the injury, or two-thirds of the state average weekly wage on the date the rehabilitation consultant's report is issued.

■ [¶ 14] The plain language of N.D.C.C. § 65–05.1–01(6) indicates it applies if the vocational consultant determines none of the priority options under N.D.C.C. § 65–05.1–01(4) are viable and will not return the employee to the lessor of two-thirds of the average weekly wage or ninety percent of the employee's preinjury earnings. If those priority options are not viable and will not return the employee to substantial gainful employment, N.D.C.C. § 65–05.1–01(6) authorizes an award of partial disability benefits based on a calculation for retained earnings capacity under that section. The plain language of N.D.C.C. § 65–05.1–01(6) represents a legislative determination that the benefits under that provision are available if none of the priority options under N.D.C.C. § 65–05.1–01(4) are viable to return the employee to substantial gainful employment. The language of N.D.C.C. 65–05.1–01(6) indicates it is not a vocational rehabilitation plan, but applies to determine an injured employee's retained earnings capacity for the calculation of partial disability benefits and is distinct from the hierarchy of rehabilitation options in N.D.C.C. § 65–05.1–01(4). That interpretation of N.D.C.C. § 65–05.1–01(6) gives meaning to the plain language of the rehabilitation and workers' compensation statutes as a whole and explicitly incorporates N.D.C.C. § 65–05–10, which says an "employee's earnings capacity may be established by expert vocational evidence of a capacity to earn in the statewide job pool." N.D.C.C. § 65–05–10(3). When read together, those statutes authorize WSI to use a statewide job pool to calculate retained earnings capacity under N.D.C.C. § 65–05.1–01(6).

[¶ 15] We conclude there is evidence from which a reasoning mind could reasonably conclude Tverberg was unwilling to complete the 24–month rehabilitation program at Williston State College under the hierarchy of options in N.D.C.C. § 65–05.1–01(4) and none of his rehabilitation options would return him to the lesser of two-thirds of the state's average weekly wage or ninety percent of his preinjury earnings, which triggered application of N.D.C.C. § 65–05.1–01(6). We, therefore, conclude WSI correctly interpreted and applied those rehabilitation provisions to calculate Tverberg's retained earnings capacity, and its decision is supported by a preponderance of the evidence.

## IV

[¶ 16] We affirm the judgment affirming WSI's order.

[¶ 17] GERALD W. VANDE WALLE, C.J., and WILLIAM F. HODNY, S.J., and CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

[¶ 18] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of CROTHERS, J., disqualified.