2010 ND 25

**Dion J. SCHOCH, Claimant and Appellant**

v.

**NORTH DAKOTA WORKFORCE SAFETY AND INSURANCE, Appellee**

and

**Funshine Express Inc., Respondent.**

**No. 20090167.**

Supreme Court of North Dakota.

Feb. 17, 2010.

Stephen D. Little, Bismarck, N.D., for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, N.D., for appellee.

CROTHERS, Justice.

[¶ 1] Dion Schoch appeals from a district court judgment affirming a decision by Workforce Safety and Insurance ("WSI") which reversed its prior acceptance of Schoch's claim after WSI decided Schoch failed to prove he sustained a work injury and which ordered Schoch to repay $6,718.81 after WSI decided Schoch willfully made a material false statement in his claim for benefits. Schoch argues he proved he sustained a compensable work injury on October 1, 2001, and WSI did not prove he made a willful and material false statement in his claim for benefits. We affirm in part, reverse in part, and remand.

I

[¶ 2] On October 16, 2001, Schoch submitted a claim to WSI for benefits, stating he sustained a "ruptured disk between L4 & L5" at 3 p.m. on October 1, 2001, while working for Funshine Express "unloading 65 cases of paper, three of us lifting cases and stacking them according to color." In response to a question on the claim form about whether he "had prior problems or injuries to that part of the body," Schoch checked "no." Schoch's claim stated that his employer was notified about the work injury on October 2, 2001, and that the president of Funshine Express signed an employer's report of injury on October 16, 2001. Schoch's claim identified his "treating doctor(s)" as Dr. Terrance Mack with West River Health Services in Hettinger. The claim form did not disclose Schoch's treatment in August 2001, and on October

1 and 2, 2001, for left hip and low back pain with chiropractor Dr. Dion Ficek. According to Schoch, Dr. Ficek's treatment was for left hip and sacroiliac pain, and Schoch did not believe Dr. Ficek's treatment was related to Dr. Mack's treatment for the disc herniation.

[¶ 3] WSI received Schoch's medical records from Dr. Mack, which reported Schoch's treatment on October 3, 2001. The records did not reference a work injury but did note Schoch presented to the clinic that day with an onset of acute low back pain:

> "He said that for the past six weeks he has had some problems with his hips, specifically on the left side, which he has been seeing a chiropractor for. His back has not bothered him up until this past weekend. He had been active on his hands and knees laying some carpet when he started to have some low back pain. He suffered through the weekend taking no medication to ease the pain and saw a chiropractor on Monday. This helped alleviate the pain after some manipulation. The pain returned again on Tuesday. He went to see a massage therapist who recommended that he go to a chiropractor. On Tuesday evening, he saw a chiropractor who attempted to manipulate the joints. This did not help at all and he began to suffer from excruciating pain."

A diagnostic test by Dr. Mack revealed a "large left L4–5 disc herniation." Schoch was admitted to a hospital for treatment with epidural steroid injections, and he was discharged from the hospital on October 5, 2001, and returned to work.

[¶ 4] In November 2001, after receiving Dr. Mack's medical records, WSI accepted Schoch's claim and paid his medical expenses. According to the WSI claims adjuster, she did not personally contact Schoch because his claim was for medical treatment and not for lost wages and because Schoch reported no prior injuries or problems to that part of the body. The claims adjuster testified she saw the reference to chiropractic treatment in Dr. Mack's notes, but did not contact Schoch because those notes indicated problems with his hip and the onset of low back pain.

[¶ 5] Schoch had no further contact with WSI until March 2003, when he again saw Dr. Mack and contacted a WSI claims analyst after his "back ... flared up." WSI authorized Schoch to see Dr. Larry Teuber in Rapid City, who diagnosed "[i]ntermittent left leg pain secondary to intervertebral disc displacement at the left L4–5 level" and "[l]ow back pain secondary to degenerative disc disease L4–5." Dr. Teuber recommended conservative treatment and medication.

[¶ 6] In February 2006, Schoch saw Dr. Catherine Houle for low back pain. In March 2006, Dr. Mark Monasky performed a L4–5 discectomy on Schoch. While processing Schoch's claim for those medical expenses, WSI saw Schoch had received chiropractic treatment from Dr. Ficek. WSI then obtained Dr. Ficek's chiropractic records, which included an exam note on August 8, 2001, stating Schoch had "increased hip and LB px off and on the last 2–3 days." Dr. Ficek's assessment was a "SI segmental dysfunction." An October 1, 2001, note by Dr. Ficek assessed Schoch with "SI segmental dysfunction, px" and stated Schoch "[c]omplains of increasing px in the L hip, LB area. Noticed it over the weekend when playing catch with a football with his son." An October 2, 2001, note by Dr. Ficek assessed Schoch with "SI segmental dysfunction, px. Dorsal segmental dysfunction, px," and stated he "[c]ontinues to complain of L hip, LB area."

[¶ 7] WSI ordered a medical review by Dr. Gregory Peterson to ascertain if

Schoch's current condition was related to his reported work injury. Dr. Peterson concluded Schoch's disc herniation was unrelated to his reported October 1, 2001 work injury, and identified "suspect[ed] fraud." After further investigation, WSI issued a notice in March 2007, concluding Schoch had not sustained a compensable work injury on October 1, 2001, denying him any further benefits, and ordering him to reimburse WSI for previously paid benefits for willfully filing a false claim or making a material false statement in support of a claim.

[¶ 8] Schoch requested a hearing. After an evidentiary hearing, an administrative law judge ("ALJ") recommended denying Schoch further benefits because he failed to prove he suffered a compensable work injury. The ALJ said that the evidence established Schoch sustained a disc herniation on October 1, 2001, but that a preponderance of the evidence did not establish the herniation was due to a work injury. The ALJ said none of Schoch's treating physicians expressed a medical opinion establishing that a work injury occurred, that a work injury caused Schoch's medical condition, or that a work injury substantially worsened any pre-existing condition. The ALJ stated Schoch's condition was more likely attributable to aging, to playing football with his son, or to laying carpet. The ALJ found Dr. Peterson's testimony persuasive that Schoch's disc herniation was a normal aging development, or was due to other causes including laying carpet, or playing football with his son. The ALJ also recommended that Schoch reimburse WSI $6,718.81 in medical expenses for willful and material false statements in support of his claim. The ALJ found Schoch's statement on his claim form that he had no prior problems or injuries to the part of the body injured was not a willful false statement. The ALJ also found Schoch's

failure to disclose that he had received treatment from Dr. Ficek on the date of the injury was a willful false statement, was material to WSI's evaluation of Schoch's claim, and had the effect of preventing WSI from obtaining Dr. Ficek's records for the August and October 2001 chiropractic treatments, which likely resulted in a different handling of Schoch's claim. WSI adopted the ALJ's recommendation, and the district court affirmed WSI's decision.

II

[¶ 9] Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, courts exercise limited review in appeals from decisions by WSI. *Forbes v. Workforce Safety & Ins. Fund,* 2006 ND 208, ¶ 10, 722 N.W.2d 536. Under N.D.C.C. §§ 28-32-46 and 28-32-49, we affirm WSI's decision unless:

"1. The order is not in accordance with the law.

"2. The order is in violation of the constitutional rights of the appellant.

"3. The provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions of law and order of the agency are not supported by its findings of fact.

"7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

"8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not

adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46.

[¶ 10] "We exercise restraint in deciding whether WSI's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of WSI." *Swenson v. Workforce Safety & Ins. Fund,* 2007 ND 149, ¶ 22, 738 N.W.2d 892. In reviewing WSI's findings of fact, "we determine only whether a reasoning mind reasonably could have decided that WSI's findings were proven by the weight of the evidence from the entire record." *Id.; see Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979). "WSI is responsible for weighing the credibility of witnesses and resolving conflicts in the evidence." *Tverberg v. Workforce Safety and Ins.,* 2006 ND 229, ¶ 8, 723 N.W.2d 676.

### III

[¶ 11] Schoch argues he proved he sustained a compensable work injury on October 1, 2001. Under N.D.C.C. § 65–01–11, claimants seeking to participate in the workers compensation fund must prove a compensable work injury by a preponderance of the evidence. *Swenson,* 2007 ND 149, ¶ 24, 738 N.W.2d 892. The "claimant must prove by a preponderance of the evidence that the medical condition for which he seeks benefits is causally related to a work injury." *Id.* "To establish a causal connection, a claimant must demonstrate that his employment was a substantial contributing factor to the injury, not that employment was the sole cause of the injury." *Id.* A "[c]ompensable injury means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings." N.D.C.C. § 65–01–02(10).

[¶ 12] Here, WSI found that a preponderance of the evidence established Schoch experienced an L4–5 disc herniation diagnosed in October 2001, but that a preponderance of the evidence did not establish the disc herniation was due to a work injury suffered on October 1, 2001. The contemporaneous medical records do not reflect any report of an injury occurring at work on October 1, 2001. Evidence establishes Schoch had symptoms consistent with a disc herniation before October 1, 2001, he had pain in his lower back and buttock area more than six weeks before October 1, 2001 and he was engaged in non-work activities that could have caused or contributed to the disc herniation. Schoch's contemporaneous medical history does not mention any work activities similar to those stated on his claim form of "unloading 65 cases of paper . . . and stacking them according to color." WSI's expert, Dr. Peterson, testified there are a number of different mechanisms of injury that can cause a disc herniation. Dr. Peterson explained the aging process of a disc can cause a tear and testified the evidence was consistent with the evolution of a disc herniation. Dr. Peterson also testified the events and activities noted in Schoch's medical records, such as playing football or laying carpet, can cause a disc condition to become more symptomatic. WSI found Schoch's treating physicians could not express a clear medical opinion that a work injury occurred, that a work injury caused Schoch's medical condition or that a work injury substantially worsened any preexisting conditions. Rather, WSI accepted Dr. Peterson's opinion that Schoch's medical condition was not caused by a work injury.

[¶ 13] There is conflicting evidence whether Schoch suffered a compensable

work injury on October 1, 2001. We do not reweigh that conflicting evidence. *See Tverberg*, 2006 ND 229, ¶ 8, 723 N.W.2d 676. We conclude a reasoning mind could reasonably conclude, as WSI did, that Schoch failed to establish he suffered a compensable work injury on October 1, 2001. We therefore affirm, concluding reasoning minds could have reasonably concluded that a preponderance of the evidence supports WSI's decision that Schoch did not sustain a compensable work injury on October 1, 2001.

### IV

[¶ 14] Schoch argues WSI failed to prove he made willful and material false statements in his claim for benefits. He argues he did not consider his October 1 and 2, 2001, chiropractic treatment for left hip and sacroiliac pain related to his work injury. He also argues he did not hide that treatment from Dr. Mack or WSI. Schoch claims he informed Dr. Mack on October 3, 2001, that he had seen a chiropractor on the two prior days, and Dr. Mack's medical records, which were provided to WSI before it accepted the claim, noted Schoch's treatment by the chiropractor.

[¶ 15] Section 65–05–33, N.D.C.C., prohibits claimants from willfully filing a false workers compensation claim or making a false statement in support of a claim, or willfully misrepresenting their physical condition. Claimants making a false claim or false statement for benefits "shall reimburse [WSI] for any benefits paid based upon the false claim or false statement and . . . shall forfeit any additional benefits relative to that injury." N.D.C.C. § 65–05–33(3). Under N.D.C.C. § 65–05–33(4), " 'statement' includes any testimony, claim form, notice, proof of injury, proof of return to work status, bill for services, diagnosis, prescription, hospital or doctor rec-

ords, x-ray, test results, or other evidence of loss, injury, or expense."

[¶ 16] "To trigger the statutory consequences of N.D.C.C. § 65–05–33 for a false statement, WSI must prove: (1) there is a false claim or statement; (2) the false claim or statement is willfully made; and (3) the false claim or statement is made in connection with any claim or application for benefits." *Forbes*, 2006 ND 208, ¶ 13, 722 N.W.2d 536. "Willfully" means "conduct engaged in intentionally and not inadvertently." *Id.* Under N.D.C.C. § 65–05–33, WSI must prove a claimant intentionally and purposefully made a false statement, and a claimant's " 'state of mind can rarely be proven directly and must usually be inferred from conduct and circumstantial evidence.' " *Forbes*, at ¶ 13 (quoting *Dean v. North Dakota Workers Comp. Bureau*, 1997 ND 165, ¶ 20, 567 N.W.2d 626).

[¶ 17] "In addition to proving that a false statement is willful, WSI must also prove the false statement is material." *Forbes*, 2006 ND 208, ¶ 14, 722 N.W.2d 536. There are two tests for materiality under N.D.C.C. § 65–05–33. *Forbes*, at ¶ 14. "If WSI seeks reimbursement for benefits paid, the level of materiality required is proof by WSI that the false claim or false statement caused the benefits to be paid in error." *Id.* "If WSI seeks only forfeiture of future benefits, however, no such causal connection is required," and a "false claim or false statement is sufficiently material for forfeiture of future benefits if the statement simply could have misled WSI or medical experts in deciding the claim." *Id.*

[¶ 18] Here, WSI sought forfeiture of future benefits and reimbursement for more than $6,000 in medical expenses. Under N.D.C.C. § 65–05–33, WSI was required to prove that Schoch willfully and not inadvertently made a false claim or

false statement in connection with a claim and that the false statement was material under the applicable test for materiality. Relevant to this issue, WSI adopted the ALJ's conclusions that:

"9. Claimant's failure to disclose on his claim form that he had no 'prior problems or injuries' to the 'part of the body injured' is not a willfully false statement; as the 'part of the body injured' was described on the claim form as a 'ruptured disc between L4 & L5; and to a reasonable non medically trained person that could be reasonably considered to be a different part of the body than the left hip for which he had received treatment from Dr. Ficek.

"10. Claimant's failure to disclose on his claim form that on the day of the injury, October 1, 2001, he had received treatment from Dr. Ficek is a willfully false statement, was material to WSI's evaluation of the claim and had the effect of preventing WSI from obtaining medical records from Dr. Ficek which would have disclosed the treatment he received in August 2001 and October 2001 and quite likely resulted in a considerably different handling of his claim."

[¶ 19] An administrative agency must adequately explain the basis for the agency's decision to facilitate appellate review. *Singha v. North Dakota State Bd. of Medical Exam'rs,* 1998 ND 42, ¶ 23, 574 N.W.2d 838; *Evans v. Backes,* 437 N.W.2d 848, 850–51 (N.D.1989). An agency's findings must sufficiently address the evidence presented by the appellant and must correctly apply the law. *See* N.D.C.C. § 28–32–46(1) and (7).

[¶ 20] The record does not establish whether WSI applied the correct legal standard for deciding if Schoch's failure to disclose Dr. Ficek's chiropractic treatment on the claim form was material for pur-

poses of reimbursement of benefits paid. Schoch testified that he did not recall if he had seen Dr. Ficek before he claimed he injured his back at 3 p.m. on October 1, 2001. It is inconsistent for WSI to determine as it did in conclusion 9 that Schoch's statement he had no prior problems or injuries to the part of the body injured was not a willful false statement because a non-medically trained person could reasonably conclude the disc herniation was to a different part of the body than that treated by Dr. Ficek, while also making conclusion 10 that Schoch's failure to disclose Dr. Ficek's treatment on the day of the work injury was a willful and material false statement. In addition to asking whether there were "prior problems or injuries to that part of the body," WSI's claim form asked for identification of the "part of the body injured," the "nature of injury" and the "treating doctor(s) name." The request for the "treating doctor(s) name" reasonably can be read to seek the names of the "doctor(s)" treating the "part of the body" injured and not the name of medical providers treating other parts of the body. WSI's claim form asks a broad and unspecific question. WSI's decision based on Schoch's answer to that question does not adequately explain its inconsistent findings about willful statements and does not evaluate Schoch's failure to report Dr. Ficek's treatment to determine whether it caused benefits to be paid in error, especially in view of Dr. Mack's October 3, 2001, medical records noting Schoch had seen a chiropractor on Monday and Tuesday of that week. WSI had Schoch's medical records with this information when it accepted Schoch's claim in November 2001, but WSI did not ask Schoch about the chiropractic treatment. WSI's decision does not adequately explain the interrelationship of those records with its inconsistent findings about willfulness and with its conclusory statement that Schoch's failure to disclose

Dr. Ficek's treatment was material and "quite likely resulted in a considerably different handling of his claim." WSI's inconsistent findings and conclusions are inadequate for us to determine whether WSI correctly applied the law to Schoch's failure to disclose Dr. Ficek's treatment on the claim form. We conclude WSI failed to apply the correct legal standard for willful and material false statements. We reverse the district court judgment regarding false statements, and we remand to WSI for correct application of the law.

## V

[¶ 21] We affirm the district court judgment regarding compensability, reverse the judgment regarding false statements and remand for proceedings consistent with this opinion.

[¶ 22] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, J., concur.

MARING, Justice, dissenting in part and concurring in part.

[¶ 23] I concur in parts II and III of the majority opinion. I respectfully dissent from part IV and would reverse the district court's judgment affirming WSI's order requiring Schoch to repay the benefits he has received.

[¶ 24] In order for WSI to require repayment of benefits under N.D.C.C. § 65–05–33(3), WSI must prove Schoch willfully made a false statement in connection with his application for benefits and that the false statement is material. *Forbes v. Workforce Safety & Ins.*, 2006 ND 208, ¶¶ 13, 14, 722 N.W.2d 536. When seeking reimbursement of the benefits paid, WSI must prove that the false statement caused the benefits to be paid in error. *Forbes*, at ¶ 14. WSI relied on Schoch's failure to disclose on his claim form that he had received treatment from Dr. Ficek, a chi-

ropractor, in order to find that Schoch had made a willful false statement that was material and caused the benefits to be paid in error. However, the medical records of Dr. Mack from October 3, 2001, which WSI had before it accepted the claim, indicated Schoch told Dr. Mack he had seen a chiropractor on October 1 and 2, 2001. Based on these undisputed facts, and a correct application of the law, Schoch's statement on his claim form could not have caused the subsequent payment of his medical benefits. Because the conclusions of law and order of WSI are not supported by its findings of fact or in accordance with the law, I would reverse that part of the judgment affirming the WSI order which orders repayment of the medical benefits.

[¶ 25] MARY MUEHLEN MARING

KAPSNER, Justice, concurring in part and dissenting in part.

[¶ 26] I, too, concur in parts II and III of the majority opinion and respectfully dissent from part IV. I would reverse the judgment requiring repayment of benefits received.

[¶ 27] "Under our standard of review, we affirm if a reasoning mind could reasonably have decided the agency's findings were proven by the weight of the evidence from the entire record." *Victor v. Workforce Safety & Ins.*, 2006 ND 68, ¶ 13, 711 N.W.2d 188.

[¶ 28] In part IV, the majority explains why a reasoning mind could not have reasonably and logically come to both Conclusions 9 and 10. However, I do not understand that internal inconsistency to provide WSI with a second opportunity to explain a factual inconsistency, not a legal inconsistency. The statements cannot be material if they are not willfully false. *Forbes v. Work-*

*force Safety & Ins. Fund,* 2006 ND 208, ¶¶ 13–14, 722 N.W.2d 536.

[¶ 29]   CAROL RONNING KAPSNER