2009 ND 157

**INDUSTRIAL CONTRACTORS, INC.,**
Respondent and Appellant

v.

**WORKFORCE SAFETY
& INSURANCE,**
Appellee

and

**Francis Rogstad, Claimant
and Appellee.**

No. 20080275.

Supreme Court of North Dakota.

Sept. 4, 2009.

Monte L. Rogneby (argued) and Leslie Bakken Oliver (appeared), Bismarck, N.D., for respondent and appellant.

Douglas W. Gigler, Special Assistant Attorney General, Fargo, N.D., for appellee, Workforce Safety & Insurance.

Steven L. Latham, Bismarck, N.D., for claimant and appellee, Francis Rogstad.

MARING, Justice.

[¶ 1] Industrial Contractors, Inc. ("Industrial Contractors") appeals from a Workforce Safety & Insurance ("WSI") final order invalidating Industrial Contractors's designated medical provider selection and allowing the claimant, Francis Rogstad, to select his own medical provider for treatment of his compensable work injury. On appeal, Industrial Contractors

argues WSI incorrectly interpreted and applied the law governing an employer's selection of a preferred provider in effect on the date of injury. We conclude WSI properly interpreted and applied the relevant statute and, further, a reasoning mind reasonably could have found WSI's findings that Industrial Contractors failed to comply with the notice requirements of N.D.C.C. § 65–05–28.2(5) were proven by the weight of the evidence from the entire record. We affirm.

## I

[¶ 2] On April 3, 2006, Rogstad was injured while working as a boilermaker for Industrial Contractors at the Leland Olds power plant near Stanton. WSI subsequently accepted Rogstad's claim for work-related injuries to his bilateral lower arm, left shoulder, right chest, and left elbow. In March 2007, WSI issued an order, including an award of benefits for Rogstad's left shoulder injury on a 50 percent aggravation basis beginning June 4, 2006, because of a preexisting left shoulder injury. WSI's order also denied further benefits on or after October 12, 2006, because Rogstad did not seek treatment from Industrial Contractors's designated medical providers and did not obtain a referral from a designated medical provider. Rogstad requested a formal hearing.

[¶ 3] After an administrative hearing, an administrative law judge ("ALJ") issued recommended findings of fact, conclusions of law, and an order, affirming WSI's award of benefits on an aggravation basis for Rogstad's left shoulder. The ALJ found, however, that Industrial Contractors failed to comply with the statutory requirements for displaying notice of its selection and use of designated medical providers and concluded Industrial Contractors's initial selection of a provider was invalid and Rogstad was permitted to se-

lect his own provider. The ALJ recommended vacating that part of WSI's order denying Rogstad benefits after October 11, 2006. WSI adopted the ALJ's recommended decision as its final order. The district court affirmed WSI's final order.

## II

[¶ 4] Courts exercise limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Bergum v. North Dakota Workforce Safety & Ins.*, 2009 ND 52, ¶ 8, 764 N.W.2d 178; *Forbes v. Workforce Safety & Ins. Fund*, 2006 ND 208, ¶ 10, 722 N.W.2d 536. The district court under N.D.C.C. § 28–32–46, and this Court under N.D.C.C. § 28–32–49, must affirm an administrative agency decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommenda-

tions by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

▮▮▮ [¶ 5] This Court exercises restraint in deciding whether WSI's findings of fact are supported by a preponderance of the evidence and does not make independent findings or substitute its judgment for that of WSI. *Reopelle v. Workforce Safety & Ins.*, 2008 ND 98, ¶ 9, 748 N.W.2d 722. We decide only whether a reasoning mind reasonably could have decided that WSI's findings were proven by the weight of the evidence from the entire record. *See Roberts v. North Dakota Workmen's Comp. Bur.*, 326 N.W.2d 702, 704–05 (N.D.1982) (citing *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979)).

▮▮▮ [¶ 6] "Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision." *Stein v. Workforce Safety & Ins.*, 2006 ND 34, ¶ 6, 710 N.W.2d 364. We will give deference to an administrative agency's construction of a statute in administering the law when that interpretation does not contradict clear and unambiguous statutory language. *Victor v. Workforce Safety & Ins.*, 2006 ND 68, ¶ 12, 711 N.W.2d 188 (quoting *Houn v. Workforce Safety & Ins.*, 2005 ND 115, ¶ 4, 698 N.W.2d 271). *See People to Save the Sheyenne River, Inc. v. North Dakota Dep't of Health*, 2008 ND 34, ¶ 15, 744 N.W.2d 748 ("An administrative agency's reasonable interpretation of a regulation is entitled to deference.").

### III

▮▮ [¶ 7] On appeal, Industrial Contractors argues WSI incorrectly interpreted and applied the law governing an employer's selection of a preferred provider in effect on the date of Rogstad's injury. WSI responds that it properly interpreted

Industrial Contractors's notice obligations to its employees regarding the required use of its preferred medical provider. WSI and Rogstad argue the weight of the evidence supports WSI's determination that Industrial Contractors's worksite postings failed to comply with the statutory requirements of N.D.C.C. § 65–05–28.2(5), which at the time of Rogstad's injury provided:

5. An employer shall give written notice to its employees when the employer makes an initial selection of a preferred provider or changes the selection of the preferred provider. An employer shall give written notice identifying the selected preferred provider to every employee hired after the selection was made. An employer who has selected a preferred provider shall display notice of the preferred provider in a conspicuous manner at fixed worksites, and wherever feasible at mobile worksites, and in a sufficient number of places to reasonably inform employees of the preferred provider and of the requirements of this section. *Failure to give written notice or to properly post notice as required under this subsection invalidates the selection, allowing the employee to make the initial selection of a medical provider.*

(Emphasis added.)

[¶ 8] WSI made several findings of fact and conclusions of law regarding Industrial Contractors's failure to comply with posting requirements:

23. ICI has implemented a plan to designate preferred providers of medical services for its employees pursuant to N.D.C.C. §§ 65–05–28.1 and 65–05–28.2. Charles P. Dahl, M.D., and the Bone and Joint Center is not one of the preferred providers designated by ICI at any time that Rogstad received medical evaluation and treatment by Dr. Dahl or

any other medical provider associated with Dr. Dahl and the Bone and Joint Center or who otherwise provided medical services to Rogstad pursuant to the request and direction of Dr. Dahl.

24. Rogstad testified that he did not know that he was required to obtain medical evaluation and treatment of a work injury from any particular medical care provider and to obtain a referral from a preferred provider for a second opinion or further treatment, or to do anything to obtain treatment of the work-related injury of his left shoulder from Dr. Dahl. He acknowledged that over the years that he was employed by ICI for various projects he had completed and signed forms prepared by ICI entitled "Designated Medical Provider Requirements" given to him by employees or agents of ICI upon his employment by ICI; the last on April 1, 2006, two days before his injury at work. But, he testified to explain, the form was just one of many forms which were distributed to him and all of the other union workers employed for a project as part of the start-up of work on the project: "There may be up to 150,200 men.... They hand out packets of paper to everyone and you sign them all and fill out your W–2s and whatever and then go to work. And then they ... assign you to your crews, and then you go to that foreman position." Asked whether he remembered signing the form entitled "Designated Medical Provider Requirements," he responded: "Not specifically that paper. I just signed everything that they gave me and went to work." Rogstad does not contend, however, that the procedure did not allow him to read the various documents he completed and signed: "They give you a whole bunch [of documents] and they tell you to go through the papers and sign them; and read them

over if you want, whatever." But, he added, "I mean, I just start signing away and go to work."

Ron Stenberg, employed by ICI as its safety manager, testified for the hearing to confirm the procedure described by Rogstad for the completion of the various documents for the employment of union craftsmen for a project, and acknowledged that there was no advice or instruction provided for the completion and signing of the Designated Medical Provider Requirements form, or the significance of the form, except "if there's questions."

25. Responding to a question whether ICI provided any other information to its employees in addition to the Designated Medical Provider Requirements form, Mr. Stenberg testified, "only what's posted in the lunchrooms that are on [sic] the plant." Asked about the "postings," Mr. Stenberg testified: "We put those in the lunchrooms and the offices." He testified to explain that the posters were a one-page piece of paper which stated who ICI's designated medical providers are, listing the names of the various providers, and that there was another " 'Report Your Injury Promptly' poster that goes along with that;" adding, "We post a lot of different posters" (later testifying on cross-examination that there may be "15 to 20 different postings"). Later asked to be more specific where the posters were placed, whether "they would be posted wherever ICI employees were working," Mr. Stenberg responded: "Not right on the job site, they would be in the lunch rooms and in the offices. They're not posted out on the plant job site." Asked where exactly that would be, Mr. Stenberg testified: "It would be where the employees eat their lunch or where they would sign-up their form." Testifying

further, he explained, "Leland Olds has several lunchrooms." Questioned again about the lunchrooms where ICI posts its notices, Mr. Stenberg responded that "they are ICI employee lunchrooms."

26. WSI filed a copy of the current notice of ICI's preferred providers which it posts in the lunch rooms and its offices at the locations where it has projects. Mr. Stenberg testified to advise that the notice which was filed is the same as was posted at Leland Olds at the time that Rogstad was employed for the project at that location in April and May 2006, except that the names of the providers would have been different. The notice is printed on an 8 ½ by 11[=]inch piece of paper which has the question "INJURED?" in all capital letters, approximately 9/16ths-inch high, at the top in reverse printing (white letters on a black background approximately an inch high across the top of page), and printed immediately below in all capital letters, approximately 3/16ths-inch high, is the statement, "ICI'S DESIGNATED MEDICAL PROVIDERS ARE." That statement is followed by a listing of the names and locations of various medical care providers. At the bottom of the page, printed in all capital letters, approximately 3/16ths-inch high and underlined, is the statement *"CONTACT YOUR SUPERVISOR FOR ASSISTANCE."* The notice does not provide any other information or advice regarding requirements for obtaining medical treatment of a work-related injury. *See* R., Ex. 59.

27. Rogstad testified to describe facilities which he and his coworkers used at Leland Olds which served as an ICI employee lunchroom:

> [B]ecause there's so many different floors and elevations, they'll have set up a plastic room made out of ... plywood, because they're shacks where you put your lunch and eat your lunch in there. They try to keep it clean for you. And then some ... floors have a—they make a regular meeting room for you.

R., Tr., p. 31, 1.17. Testifying on rebuttal, Rogstad explained again that the lunchroom which he and his coworkers used at Leland Olds was a temporary enclosure in the area where they were working which was fabricated using dimensional lumbar [sic] and Visqueen (a brand of polyethylene film). He testified that the workers built racks on which to hang their coats and work clothes, and tables were placed in the enclosure to use to eat their lunch. He testified further to recall that the only postings in the facility he and his coworkers used as their lunchroom were notices of things for sale which workers attached with duct tape to the Visqueen which formed the walls of the enclosure because there was no bulletin board to put anything on.

[¶ 9] The ALJ made the following conclusions of law, which were also adopted by WSI in its final order:

> 3. Rogstad does not contend that the written notice of ICI's selection of preferred providers (or designated medical providers) he received when he completed and signed the various forms he was given by ICI for his employment for his work at Leland Olds in April and May 2006 was deficient in any respect. He does contend and argue, however, that ICI failed to display notice "in a conspicuous manner ... and in a sufficient number of places to reasonably inform employees of the preferred provider[s] and of the requirements of ... [the statute]" as provided by the statute.

WSI contends and argues that a reasonable interpretation of the statute for

its application does not require that an employer provide a written notice of its selection of a preferred provider to each employee and also display notice of its selection of a preferred provider, and argues the logic of its interpretation in the circumstance of Rogstad's acknowledgment of receipt of a written notice and the opportunity make any inquiry concerning the requirement for obtaining medical treatment of a work injury.

While the provision of the statute for failure to provide the required notice uses the disjunctive conjunction "or," in the context of subsection 5, it is more likely that the statute contemplates both individual written notice to each employee and the display or posting of notice "in a conspicuous manner ... and in a sufficient number of places to reasonably inform employees." Rogstad's testimony to recall that he would "just start signing away and go to work" as well as the desirability, if not necessity, to remind employees of the requirement to obtain medical treatment of work injuries from preferred providers evidences that intent of the Legislature to require both written notice to individual employees and the display of that notice at the workplace.

4. Considering the evidence in its entirety and in context, the greater weight of the evidence shows that notice of ICI's selection of preferred providers of medical treatment of work injuries was not displayed in the temporary facility which ICI provided for Rogstad and his coworkers to use to keep their clothes and to eat lunch, and there is no evidence that Rogstad used, or would likely have used, any other lunchroom or office in which ICI displayed notice of its selection of preferred providers. Moreover, and equally important, there is no evidence of record that any notice which ICI displayed anywhere to inform employees of its selection of preferred providers of medical treatment of work injuries also provided information of the requirement of the statute for the use of the selected preferred providers—significantly and specifically, that the statute requires that WSI "may not pay for treatment by a provider who is not a preferred provider, unless a referral was made by the preferred provider." ICI's advice to its employees to contact their supervisor for assistance does not comply with the requirement of the plain language of the statute.

5. ICI having failed to properly display notice of its selection of preferred providers of medical treatment of work injuries as required by statute, Rogstad may make an initial selection of a medical provider as he did for the treatment of the injury of his left shoulder which he sustained on April 3, 2006. N.D.C.C. § 65–05–28.[2](5).

[¶ 10] Industrial Contractors does not directly contest WSI's factual findings that Industrial Contractors failed to properly display notice of its designated medical providers; rather, Industrial Contractors frames the issue as a legal question based on WSI's purported failure to consider the "entire" risk management program, including the designated medical provider program component, under N.D.C.C. §§ 65–05–28.1, 65–05–28.2 (2003), and N.D. Admin. Code ch. 92–05–01 (7/2004). Industrial Contractors's argument is unavailing.

 [¶ 11] Statutory interpretation is a question of law. *Rojas v. Workforce Safety & Ins.*, 2006 ND 221, ¶ 13, 723 N.W.2d 403. "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are

harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07." *Public Serv. Comm'n v. Minnesota Grain, Inc.*, 2008 ND 184, ¶ 9, 756 N.W.2d 763 (citations omitted). We will harmonize statutes if possible to avoid conflicts between them, and our statutory interpretation "must be consistent with legislative intent and done in a manner [to further] the policy goals and objectives of the statutes." *Haugenoe v. Workforce Safety & Ins.*, 2008 ND 78, ¶ 8, 748 N.W.2d 378 (citations omitted). "We presume the Legislature did not intend an unreasonable result or unjust consequence." *Id.* (quotation omitted).

[¶ 12] Section 65–05–28.2(5), N.D.C.C., provides that "[f]ailure to give written notice *or* to properly post notice as required under this subsection invalidates the selection, allowing the employee to make the initial selection of a medical provider." (Emphasis added.) "The word 'or' is disjunctive in nature and ordinarily indicates an alternative between different things or actions." *State v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 14, 712 N.W.2d 828 (citations omitted). "Terms or phrases separated by 'or' have separate and independent significance." *Id.* The plain language of N.D.C.C. § 65–05–28.2(5) requires both written notice to the employee and posting of an employer's designated medical provider selection under the program, and any failure to comply with either requirement under "this subsection invalidates the [employer's] selection," permitting the employee's initial selection of a medical provider. This statute mandates compliance with the specific "subsection," as opposed to any additional regulations to be promulgated by WSI.

[¶ 13] Industrial Contractors argues that WSI's final order, invalidating Industrial Contractors's preferred provider selection based only on N.D.C.C. § 65–05–28.2, completely disregards WSI's regulations which Industrial Contractors was required to follow. Industrial Contractors claims that WSI's order ignores Industrial Contractors's "legal status" as an approved participant in WSI's risk management program under the relevant language of N.D. Admin. Code ch. 92–05–01. Industrial Contractors essentially asserts that WSI's decision in this case waives and disregards WSI's own regulations by failing to consider them. However, it is not clear from Industrial Contractors's argument which regulations were specifically waived or disregarded. We reject Industrial Contractors's argument that once it was "approved" as a participant in the program and attained this "legal status," it could not have violated N.D.C.C. § 65–05–28.2(5).

[¶ 14] WSI argues that the regulations and publications provide for the "eligibility" of an employer to participate in the program and for an employer's selection of a preferred provider, but actual "use" of an employer's preferred provider following a work injury is governed by N.D.C.C. § 65–05–28.2. WSI also asserts that there were no "additional" regulations to consider because WSI did not promulgate any regulations under N.D.C.C. § 65–05–28.2. Indeed, the language of N.D.C.C. § 65–05–28.2(5) contemplates an employer's continued compliance, rather than an employer's initial program eligibility. Further, regardless of the content of the WSI publication "Workforce Safety and Risk Management Program," which Industrial Contractors asserts was "incorporated by reference" by the risk management program regulations and which Industrial Contractors argues WSI failed to consider here, WSI is not precluded from finding a participating employer failed subsequently to comply with N.D.C.C. § 65–05–28.2(5). We conclude WSI's interpretation of the

law does not contradict clear and unambiguous statutory language. *See Victor,* 2006 ND 68, ¶ 12, 711 N.W.2d 188.

[¶ 15] Additionally, Rogstad argues on appeal that Industrial Contractors's present arguments were not raised in the administrative hearing and were not included in the specifications of error on appeal. It is well-settled that this Court will not consider an issue that was not raised in the administrative proceedings. *See S & S Landscaping Co. v. North Dakota Workers' Comp. Bur.,* 541 N.W.2d 80, 83 (N.D.1995) (holding this Court could not consider employer's issue raised on appeal where employer did not raise the issue in the administrative proceedings); *Froysland v. North Dakota Workers Comp. Bur.,* 432 N.W.2d 883, 890 n. 4 (N.D.1988) (holding issue was not raised before the bureau and therefore contention was not properly before this Court); *cf. Kroeplin v. North Dakota Workmen's Comp. Bur.,* 415 N.W.2d 807, 808 n. 1 (N.D.1987) (refusing to address issue about promulgation of regulation where the parties had not raised the issue). Whether Industrial Contractors properly complied with the "entire" risk management program, under N.D.C.C. §§ 65–05–28.1, 65–05–28.2, and N.D. Admin. Code ch. 92–05–01, or with the WSI publication purportedly "incorporated by reference" by the regulations entitled, "Workforce Safety and Insurance Risk Management Program" was neither argued nor presented to the ALJ during the administrative proceedings.

[¶ 16] Although Industrial Contractors asserts that the "Workforce Safety and Insurance Risk Management Program" publication was "incorporated by reference" by the regulations, this publication is not in the record and we decline to review it on appeal. *See, e.g., Stenvold v. Workforce Safety & Ins.,* 2006 ND 197, ¶ 15, 722 N.W.2d 365 (affirming where claimant's sole challenge to WSI's final order denying further disability benefits was based not upon the record of the hearing before the ALJ but rather upon evidence which is not included in that record); *Sprunk v. North Dakota Workers Comp. Bur.,* 1998 ND 93, ¶ 7, 576 N.W.2d 861 ("Unless otherwise provided by statute, 'the agency record constitutes the exclusive basis for administrative agency action and judicial review of an administrative agency action.' N.D.C.C. § 28–32–17(5)."). Despite Industrial Contractors's assertion here that its argument was presented to the district court, Industrial Contractors concedes that neither Rogstad nor WSI responded to its arguments under N.D. Admin. Code ch. 92–05–01 at the district court level, and the district court in affirming WSI's final order also did not address this argument. We conclude these issues were not preserved for review.

[¶ 17] Based upon our review of the record, we conclude a reasoning mind reasonably could have decided WSI's finding that Industrial Contractors failed to comply with the specific statutory notice requirements of N.D.C.C. § 65–05–28.2(5) were proven by the weight of the evidence on the entire record. We further hold that WSI did not err as a matter of law in concluding that Industrial Contractors selection of a designated medical provider was invalid and that Rogstad was permitted to select his own medical provider, and in vacating that part of WSI's order denying Rogstad benefits for the treatment of the work-related injury of his left shoulder after October 11, 2006, by any provider not selected by his employer.

IV

[¶ 18] We have considered the remaining issues and arguments raised by Industrial Contractors and determine they are either unnecessary to our decision or with-

out merit. The district court judgment affirming WSI's order is affirmed.

[¶ 19] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., EVERETT NELS OLSON, S.J., and DANIEL J. CROTHERS, J., concur.

[¶ 20] The Honorable WILLIAM F. HODNY, S.J., and the Honorable EVERETT NELS OLSON, S.J., sitting in place of KAPSNER, J. and SANDSTROM, J., disqualified.