2012 ND 72

**DAKOTA RESOURCE COUNCIL, Petitioner and Appellant,**

v.

**NORTH DAKOTA PUBLIC SERVICE COMMISSION, McLean County, North Dakota Department of Transportation, and North Dakota Game and Fish Department and Falkirk Mining Company, Respondents and Appellees.**

No. 20110226.

Supreme Court of North Dakota.

April 10, 2012.

Derrick Lance Braaten (argued) and Lindsey Nieuwsma (appeared), Bismarck, ND, for Dakota Resource Council, petitioner and appellant.

Mark Edward Gruman (argued), North Dakota Public Service Commission, Bismarck, ND, for North Dakota Public Service Commission, respondent and appellee.

Brian R. Bjella (argued) and Christopher Friez (appeared), Bismarck, ND, for Falkirk Mining, respondent and appellee.

Zachary Blaine Smith (appeared), Office of Attorney General, Bismarck, ND, for ND Department of Transportation and ND Game and Fish, respondents and appellees.

Ladd Ronald Erickson (on brief), State's Attorney, Washburn, ND, for McLean County, respondent and appellee.

CROTHERS, Justice.

[¶ 1] The Dakota Resource Council ("DRC") appeals a district court judgment affirming a North Dakota Public Service Commission ("PSC") order. DRC argues (1) the PSC's decision was not in accordance with the law and (2) the PSC's conclusions of law and order were not supported by its findings of fact. We affirm.

I

[¶ 2] In August 2008, Falkirk Mining Company filed an application with the PSC requesting revision of a surface mining permit. Falkirk proposed changing the postmining use of 428 acres of land from agricultural and industrial use to recreational use. The purpose of the revision was to facilitate the transfer of approximately 730 acres of land from Falkirk to the North Dakota Department of Transportation ("NDDOT"). The NDDOT planned to use the land as mitigation acres to eliminate "no mow" areas within the rights-of-way of the state highway system in McLean County. To implement the mitigation plan, the NDDOT and the

North Dakota Game and Fish Department agreed Game and Fish would manage the land as a wildlife management area.

[¶ 3] In March 2010, the PSC granted the revision subject to the right of adversely affected parties to request a formal hearing. In April 2010, DRC requested a hearing. DRC asserted 86 acres located in noncontiguous parcels throughout the proposed wildlife management area should remain designated for agricultural use. Game and Fish planned to allow local farmers to grow crops on the 86 acres, harvesting 70 percent and leaving the remaining 30 percent standing as food for wildlife.

[¶ 4] McLean County, the NDDOT and Game and Fish petitioned to intervene. The PSC allowed intervention. In July 2010, the PSC held a public hearing. Several witnesses testified at the hearing including DRC's staff director, the PSC's reclamation division director, Falkirk's environmental manager, the chairman of the McLean County Commission, the director of the NDDOT and the director of Game and Fish. The PSC affirmed its conditional approval of the revision to Falkirk's permit. DRC appealed to the district court. The district court affirmed the PSC's decision.

## II

[¶ 5] "Courts exercise limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32." *Industrial Contractors, Inc. v. Workforce Safety & Ins.*, 2009 ND 157, ¶ 4, 772 N.W.2d 582. Under N.D.C.C. § 28–32–49, our standard of review of an agency's decision is the same as the standard applied by the district court under N.D.C.C. § 28–32–46. *Industrial Contractors,* at ¶ 4. We will not reverse an agency decision unless:

"1. The order is not in accordance with the law.
"2. The order is in violation of the constitutional rights of the appellant.
"3. The provisions of this chapter have not been complied with in the proceedings before the agency.
"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
"6. The conclusions of law and order of the agency are not supported by its findings of fact.
"7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
"8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46.

## III

[¶ 6] Chapter 38–14.1, N.D.C.C., is part of North Dakota's surface coal mining and reclamation program established in accordance with the requirements of the federal Surface Mining Control and Reclamation Act of 1977. *See* 30 U.S.C. § 1253. The North Dakota program makes the PSC "the state regulatory authority for all purposes relating to the Surface Mining Control and Reclamation Act of 1977." N.D.C.C. § 38–14.1–02(4). The PSC has several program-related powers and duties, including "issu[ing] permits for surface coal mining operations" and "promulgat[ing] such regulations as may be necessary to carry out the purposes and provisions of this chapter

and the Surface Mining Control and Reclamation Act of 1977." N.D.C.C. § 38–14.1–03(10)–(11).

## A

[¶ 7] DRC argues the PSC order was not in accordance with the law because under N.D.C.C. § 38–14.1–24(2) and its implementing regulations, recreational use can never be a "higher or better" use than agricultural use. The PSC responds that neither the statute nor the implementing regulations assign an order of priority to postmining land uses.

[¶ 8] "Statutory interpretation is a question of law." *Industrial Contractors*, 2009 ND 157, ¶ 11, 772 N.W.2d 582. "Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision." *Id.* at ¶ 6 (quotation omitted). "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07." *Id.* at ¶ 11 (quotation omitted). When a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.

[¶ 9] Section 38–14.1–24, N.D.C.C., establishes environmental protection performance standards for surface coal mining and reclamation operations. Under N.D.C.C. § 38–14.1–24(2):

"General performance standards are applicable to all surface coal mining and reclamation operations and must require the permittee at a minimum to:

. . . .

"2. Restore the land affected to a condition capable of supporting the uses which it was capable of supporting prior to any mining, or higher or better uses approved by the commission, which may include industrial, commercial, agricultural, residential, recreational, or public facilities. In approving the postmining land use, or changes thereto, the commission shall establish by regulation postmining land use criteria that must be demonstrated by the permittee and considered by the commission in making its decision."

Section 69–05.2–23–02, N.D. Admin. Code, implementing N.D.C.C. § 38–14.1–24, lists ten permissible postmining land uses:

"Land use is categorized as follows:

"1. Cropland.

"2. Tame pastureland.

"3. Native grassland.

"4. Woodland.

"5. Fish and wildlife habitat.

"6. Developed water resources.

"7. Recreation.

"8. Residential.

"9. Industrial and commercial.

"10. Shelterbelts."

Section 69–05.2–23–03, N.D. Admin. Code, provides criteria for approving alternative postmining land uses.

[¶ 10] DRC argues that "[w]hen the statute is read as a whole, it is clear that a recreational use is not a 'higher or better' use than an agricultural use, or more specifically, a cropland use." DRC relies on the declaration of findings and intent at N.D.C.C. § 38–14.1–01(2) and (5) and the environmental protection performance standard at N.D.C.C. § 38–14.1–24(17) to support its argument. Section 38–14.1–01, N.D.C.C., provides:

"The legislative assembly finds and declares that:

. . . .

"2. The expansion of coal mining to meet the nation's energy needs makes even more urgent the establishment of appropriate standards to minimize damage to the environment and to productivity of the soil and to protect the health and safety of the public.

. . . .

"5. Surface coal mining and reclamation operations should be so conducted as to aid in maintaining and improving the tax base, to provide for the conservation, development, management, and appropriate use of all the natural resources of affected areas for compatible multiple purposes, and to ensure the restoration of affected lands designated for agricultural purposes to the level of productivity equal to or greater than that which existed in the permit area prior to mining."

Under N.D.C.C. § 38–14.1–24(17), a permittee must, at a minimum:

"17. Restore lands affected by the surface coal mining operation which have been designated for postmining agricultural purposes to the level of productivity equal to or greater, under equivalent management practices, than nonmined agricultural lands of similar soil types in the surrounding area. . . ."

[¶ 11]  The provisions cited by DRC establish that restoring land to agricultural use is one purpose of the surface coal mining and reclamation program.  However, the provisions do not make agricultural use the highest or best use.  Neither N.D.C.C. § 38–14.1–24(2) nor its implementing regulations establish a hierarchy of postmining land uses.  Based on the plain language of the statutes cited by DRC, we conclude agricultural use is not always a higher or better postmining land use than recreational use.  Section 38–14.1–24(2), N.D.C.C., did not require the

PSC to designate the 86 acres for agricultural use.

B

[¶ 12]  DRC argues the PSC's conclusions of law and order were not supported by its findings of fact because the PSC relied on improper justifications to make its decision.  The PSC responds that its findings supported its decision affirming the order granting the revision.

[¶ 13]  Postmining lands reclaimed for agricultural use are subject to different performance bonding and revegetation standards than are postmining lands reclaimed for recreation.  N.D.C.C. § 38–14.1–16(4).  Postmining lands used for agriculture are subject to a minimum ten-year bond liability period and must be restored "to the level of productivity equal to or greater, under equivalent management practices, than nonmined agricultural lands of similar soil types in the surrounding area."  N.D.C.C. § 38–14.1–24(17); N.D. Admin. Code §§ 69–05.2–12–09(1), 69–05.2–22–07. Postmining lands designated for recreational use may be released from bond liability after a period of less than ten years and must satisfy less stringent revegetation requirements.  N.D. Admin. Code §§ 69–05.2–12–09(2), 69–05.2–22–07.

[¶ 14]  At the hearing, Falkirk's environmental manager testified the land transfer agreement between Falkirk and the NDDOT required approval of Falkirk's permit revision request because the agreement was conditioned on Falkirk's release from bond liability.  The environmental manager explained that changing the land to recreational use would permit earlier bond release than if the land remained designated for agricultural use.

[¶ 15]  The PSC's findings of fact included a finding regarding bond liability:

"The ten-year revegetation responsibility period under North Dakota Administrative Code Section 69–05.2–12–09 that applies to many post-mining land uses does not apply to recreational use. In addition, the requirement to restore the pre-mine productivity does not apply to land having post-mining recreational use. Subsection 17 of North Dakota Century Code Section 38–14.1–24 only requires mine operators to restore the pre-mine productivity on disturbed lands that will be used for agricultural purposes. Changing the post-mining land use on the 86 acres in question from agricultural to recreational will allow said lands to be totally released from bond earlier than should said lands remain in agricultural land use."

DRC argues this finding shows the PSC granted the revision not because recreation was a "higher or better" use, but to facilitate the transfer of land from Falkirk to the NDDOT. DRC asserts cropland is the appropriate postmining land use because Game and Fish plans to use the 86 acres for crop production. The PSC responds that its findings supported the conclusion that recreational use is the appropriate use because the 86 acres are located in smaller parcels throughout the proposed management area and will be used as wildlife food plots. Regarding the intended use of the 86 acres, the PSC found that "the 86 acres in question are scattered in three smaller tracts which makes them less than ideal for standard farming and ranching operations, but are preferable as wildlife food plots and grazing areas." The PSC found several public benefits would result if the 86 acres were used for wildlife food plots:

"Changing the post-mining land use on the 86 acres in question is appropriate and justified by the multiple public benefits to be derived from the change . . . includ[ing] wetlands mitigation, satisfaction of the State of North Dakota's no-mow obligation, the 86 acres will be available to local farmers for cropping purposes, and that a valuable and unique area for wildlife habitat will be created and managed for use and enjoyment by the public."

Based on its findings, the PSC concluded that "[s]ubstantial public benefit will be achieved by changing the post-mining land use on the 86 acres to recreational" and affirmed its order approving Falkirk's revision request.

[¶ 16] When considered together, the PSC's findings of fact do not indicate its decision to grant the revision was based on the desire to facilitate the land transfer agreement rather than on consideration of the higher and better use of the land. In addition to considering Falkirk's bond liability, the PSC recognized Game and Fish intended to use the land not for traditional agricultural production, but for wildlife food plots and grazing areas and considered the public benefits stemming from such use. The PSC's conclusions and order affirming its decision granting the revision to recreational use were supported by its findings of fact.

## IV

[¶ 17] We affirm the district court judgment affirming the PSC order.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 19] The Dakota Resource Council argues that 86 acres should not be reclassified from a post-mining use of agricultural to a post-mining use of recreational. The Public Service Commission found that the

portion of this 86 acres that had been disturbed by mining had been restored as if the use would continue to be agricultural.

[¶ 20] The Dakota Resource Council has not argued the interrelationship between state law and the federal Surface Mining Control and Reclamation Act of 1977, as amended at 30 U.S.C. §§ 1201–1328. Nor has it suggested that the federal Act's specific provisions relating to "prime farmland" would apply here.

[¶ 21] I agree the permit revision should be affirmed.

[¶ 22] DALE V. SANDSTROM