2009 ND 52

**William BERGUM, Claimant
and Appellant**

v.

**NORTH DAKOTA WORKFORCE
SAFETY AND INSURANCE,**
Appellee

**and**

**Development Homes, Inc., Respondent.**

**No. 20080097.**

Supreme Court of North Dakota.

April 6, 2009.

Alice R. Senechal, Robert Vogel Law Office, P.C., Grand Forks, for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, for appellee.

MARING, Justice.

[¶ 1]  William Bergum appeals from a district court judgment affirming a Workforce Safety & Insurance ("WSI") final order, which dismissed his application for benefits. Because we conclude a reasoning mind reasonably could have found that Bergum failed to establish by a preponderance of the evidence that his January 6, 2006, work incident substantially accelerated the progression of, or substantially worsened the severity of, Bergum's preexisting condition of chronic low back pain, we affirm.

I

[¶ 2]  The record reflects that Bergum has had a long history of treatment for back pain dating back to 1990, and there is no dispute that Bergum has a preexisting condition of chronic low back pain. In August 1990, Bergum submitted a claim for workers compensation benefits for low back strain after lifting a generator while working as a plumber. In February 1992, Bergum submitted a claim for benefits for low back pain after moving a cabinet at work, and a chiropractor diagnosed Bergum with lumbar strain and lumbar subluxation. In April 1994, Bergum submitted another claim for low back strain after working, but it was not related to any specific incident. In August 1996, Bergum submitted a claim for low back pain and again sought medical care for pain following work, which again was not related to a specific incident. Around that time, Bergum was placed on permanent medium work restrictions limiting lifting to 50 pounds and bending to nine times per hour, with instructions to maintain back precautions. Bergum testified that he was aware of the 50–pound weight restriction, but not the bending restriction.

[¶ 3]  Since May 2001, Bergum's treating physician has been Dr. Yvonne Gomez, a board certified family practitioner. Bergum's medical records indicate Bergum sought medical treatment for temporary worsening of his back pain from non-work related activity in 2001, due to an exacerbation brought on by standing after sitting, and in 2004, after using a pressure washer in a garage. Bergum also sought medical attention for low back pain in December 2003, and although the records do not indicate any specific precipitating incident, the low back pain is described as chronic, recurrent, and flaring. In January 2004, Dr. Gomez diagnosed Bergum with recurrent lumbar strain and recommended an MRI. A January 2004 MRI revealed arthritic changes and degeneration in Bergum's back, along with some disc bulging, but no disc herniation or other acute injuries.

[¶ 4]  Bergum submitted a claim for benefits with WSI in January 2006, alleging he injured his left hip and back during the course of his employment at Development Homes, Inc., in Grand Forks. Bergum had worked at Development Homes

as an operations maintenance worker for almost six years. On January 6, 2006, Bergum and a co-worker were disassembling an old hospital bed, which involved bending, twisting, and lifting pieces weighing approximately 50 pounds. Bergum reported feeling pain on the left side of his lower back and notified his supervisor. Bergum sought medical treatment for his low back from Dr. Gomez on January 9, 2006.

[¶ 5] In March 2006, WSI denied Bergum's claim for benefits, concluding Bergum had failed to prove he had sustained a compensable injury. WSI concluded that the January 6, 2006, work-related incident "was a trigger of [Bergum's] pre-existing condition but it did not substantially speed up the worsening of that condition or aggravate the severity of that condition." Bergum requested reconsideration of WSI's denial, and in April 2006, WSI dismissed his claim. WSI found the greater weight of the evidence did not indicate Bergum's employment activity on January 6, 2006, was more than a trigger that produced symptoms from his preexisting, underlying low back condition that would have progressed similarly absent the employment and, further, that the employment activity did not substantially accelerate the progression of, or substantially worsen the severity of, Bergum's preexisting underlying low back condition.

[¶ 6] In September 2006, Bergum requested a formal hearing on WSI's final order. In March 2007, an administrative law judge ("ALJ") held a hearing on Bergum's claim. The issue specified for the ALJ's consideration was whether Bergum had sustained a compensable injury to his lumbar spine on January 6, 2006. In July 2007, the ALJ issued its recommended findings of fact, conclusions of law, and order, and recommended that WSI's final order dismissing Bergum's claim be af-

firmed. The ALJ found that Bergum had failed to establish by a preponderance of the evidence that his work activity substantially accelerated the progression of, or substantially worsened the severity of, his preexisting condition of chronic low back pain.

[¶ 7] WSI adopted the ALJ's recommended findings of fact, conclusions of law, and order. In August 2007, Bergum appealed WSI's decision to the district court, which affirmed WSI's final order.

II

[¶ 8] Courts exercise only a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Olson v. Workforce Safety & Ins.*, 2008 ND 59, ¶ 8, 747 N.W.2d 71. Under N.D.C.C. §§ 28–32–46 and 28–32–49, the district court, and this Court on further appeal, must affirm an administrative agency decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of [N.D.C.C. ch. 28–32] have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On appeal from the district court's decision, we review the administrative agency's decision in the same manner as the district court, giving due respect to the district court's analysis and review. N.D.C.C. § 28–32–49; *Von Ruden v. North Dakota Workforce Safety & Ins. Fund*, 2008 ND 166, ¶ 8, 755 N.W.2d 885; *Reopelle v. Workforce Safety & Ins.*, 2008 ND 98, ¶ 9, 748 N.W.2d 722; *Swenson v. Workforce Safety & Ins. Fund*, 2007 ND 149, ¶ 21, 738 N.W.2d 892.

[¶ 9] This Court exercises restraint in deciding whether WSI's findings of fact are supported by a preponderance of the evidence and does not make independent findings or substitute its judgment for that of WSI. *Reopelle*, 2008 ND 98, ¶ 9, 748 N.W.2d 722. "On appeal, we determine whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record, however, questions of law are fully reviewable." *Von Ruden*, 2008 ND 166, ¶ 8, 755 N.W.2d 885.

### III

[¶ 10] There is no dispute that Bergum has a preexisting condition of chronic low back pain. The only dispute is whether Bergum's January 6, 2006, work incident substantially worsened the severity of, or substantially accelerated the progression of, Bergum's preexisting condition of chronic low back pain. Bergum argues that WSI erred in determining that his increased pain, increased need for medical care, and increased need for medication did not constitute a substantial worsening or acceleration of his preexisting condition under N.D.C.C. § 65–01–02(10)(b)(7).

[¶ 11] A claimant seeking workforce safety and insurance benefits has the burden of proving by a preponderance of the evidence that the claimant has suffered a compensable injury and is entitled to benefits. N.D.C.C. § 65–01–11; *Manske v. Workforce Safety & Ins.*, 2008 ND 79, ¶ 9, 748 N.W.2d 394. To carry this burden, a claimant must prove by a preponderance of the evidence that the medical condition for which benefits are sought is causally related to a work injury. *Manske*, ¶ 9; *Swenson*, 2007 ND 149, ¶ 24, 738 N.W.2d 892.

[¶ 12] Under N.D.C.C. § 65–01–02(10), a compensable injury "must be established by medical evidence supported by objective medical findings." Section 65–01–02(10)(b), N.D.C.C., excludes preexisting injuries from what is defined as a "compensable injury," stating in part:

10. "Compensable injury" means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.

. . . .

b. The term does not include:

. . . .

(7) Injuries attributable to a preexisting injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition *unless the employment substantially accelerates its progression or substantially worsens its severity.*

(Emphasis added.) Thus, under N.D.C.C. § 65–01–02(10)(b)(7), unless a claimant's employment "substantially accelerates" the progression of, or "substantially worsens"

the severity of, a preexisting injury, disease, or other condition, it is not a "compensable injury" when the claimant's employment merely acts to trigger symptoms in the preexisting injury, disease, or other condition.

## A

[¶ 13] Bergum argues that although a worsening of his preexisting condition is not apparent on x-ray or other radiological testing, Bergum's symptoms have worsened since the January 2006 incident and have more significantly impacted him. Bergum further argues his injury is compensable based upon this Court's decision in *Geck v. North Dakota Workers Comp. Bur.*, 1998 ND 158, 583 N.W.2d 621. We disagree.

[¶ 14] In *Geck*, 1998 ND 158, ¶ 10, 583 N.W.2d 621, the claimant for workers compensation benefits suffered pain in her knee caused by kneeling at work, resulting in her underlying condition of arthritis becoming symptomatic and painful. Under the version of N.D.C.C. § 65–01–02 then in effect, this Court stated that when employment "triggers symptoms in a latent and underlying condition, compensation is generally not allowed if the underlying condition would likely have progressed similarly in the absence of the employment trigger, unless the employment trigger is a substantial aggravating or accelerating factor." *Geck*, ¶ 7 (emphasis omitted); *see also Hein v. North Dakota Workers Comp. Bur.*, 1999 ND 200, ¶ 17, 601 N.W.2d 576 (quoting *Geck*). In *Geck*, at ¶ 13, this Court held that the ALJ had failed to reconcile favorable medical evidence and failed to set forth expressly the reasons for disregarding the favorable medical evidence. In light of the medical evidence, this Court remanded the *Geck* case to the Bureau to make findings whether the employment trigger "substantially aggravat-

ed" the arthritis in the claimant's knee. *Geck*, at ¶ 14.

[¶ 15] In this case, the issue is whether Bergum's work-related incident "substantially accelerated" the progression of, or "substantially worsened" the severity of, a preexisting injury, disease, or other condition. Unlike *Geck*, the ALJ's opinion here, adopted by WSI as its final order, made a number of specific factual findings addressing the competing expert physician opinions and ultimately accepted the opinion of WSI's examining physician, Dr. Joel Gedan, a board certified neurologist, over the opinion of Bergum's treating physician, Dr. Gomez. As will be discussed further, WSI's final order contains findings of fact and conclusions of law that explicitly explain why Dr. Gedan's expert opinion was accepted over Dr. Gomez's opinion. We conclude that our decision in the *Geck* case does not mandate a finding that Bergum has a compensable injury in this case.

## B

[¶ 16] Bergum argues that WSI improperly relied upon the opinion of WSI's examining physician when Dr. Gedan assumed an increase in symptoms was not a sufficient basis to find Bergum's injury compensable. Bergum further argues that WSI erred in not considering Bergum's own treating physician's opinion to be objective medical evidence.

[¶ 17] This Court has refused to create a presumption that a treating physician's opinion is entitled to greater weight than those of other examining physicians. *See Swenson*, 2007 ND 149, ¶ 27, 738 N.W.2d 892. WSI must, however, weigh any conflicts in medical evidence and adequately explain its reasons for rejecting evidence favorable to a claimant. *See Thomas v. Workforce Safety & Ins.*, 2005 ND 52, ¶ 9, 692 N.W.2d 901; *Barnes v. Workforce Safety & Ins.*, 2003 ND 141,

¶ 20, 668 N.W.2d 290; *see also* N.D.C.C. § 28–32–46(7). As we explained in *Huwe v. Workforce Safety & Ins.*, 2008 ND 47, ¶ 10, 746 N.W.2d 158 (citations omitted):

WSI has the responsibility to weigh the credibility of medical evidence and resolve conflicting medical opinions. When confronted with a classic "battle of the experts," a fact-finder may rely upon either party's expert witness. Although WSI may resolve conflicts between medical opinions, the authority to reject medical evidence selectively does not permit WSI to pick and choose in an unreasoned manner. WSI must consider the entire record, clarify inconsistencies, and adequately explain its reasons for disregarding medical evidence favorable to the claimant.

*See also Geck*, 1998 ND 158, ¶ 13, 583 N.W.2d 621. In this case, WSI did recognize that " '[o]bjective medical evidence' may include 'a physician's medical opinion based on an examination, a patient's history, and the physician's education and experience.' " *Myhre v. North Dakota Workers Comp. Bur.*, 2002 ND 186, ¶ 15, 653 N.W.2d 705.

[¶ 18] It is undisputed that Bergum has experienced chronic low back pain stemming from a work-related injury occurring in 1990. The only dispute is whether Bergum's January 2006 incident substantially worsened the severity of Bergum's condition or substantially accelerated the progression of Bergum's condition. Here, the ALJ was presented with a "battle of the experts" and received conflicting medical evidence, including testimony from Bergum's treating physician, Dr. Gomez, and WSI's examining physician, Dr. Gedan.

[¶ 19] Prior to his January 2006 work incident, the last time that Dr. Gomez saw Bergum was in December 2004. In its final order, WSI found that at the time, Dr. Gomez considered Bergum "at 'baseline' regarding his low back problems, in that he experienced daily low back discomfort, and required the regular use of an anti-inflammatory drug and a muscle relaxant, and, on an as needed basis, pain medication." In her testimony, Dr. Gomez acknowledged that Bergum had a significant history of back problems, including "flares off and on." Dr. Gomez testified, however, that Bergum's symptoms were more severe after the incident. Dr. Gomez testified that the January 2006 incident substantially accelerated Bergum's low back problems and substantially worsened the severity of his low back problems. When Dr. Gomez was questioned about objective medical findings supporting her opinion, Dr. Gomez referred to her documentation in the medical records, which included muscle spasms, increased pain, and a failure to return to baseline.

[¶ 20] WSI also specifically addressed an inconsistency between Dr. Gomez's testimony and her previous written correspondence to WSI:

11. However, Dr. Gomez'[s] testimony is inconsistent with her written response on March 3, 2006, to WSI's inquiry of February 17, 2006, wherein she indicated that the injury of January 6, 2006, did *not* substantially accelerate the progression or substantially worsen the severity of the preexisting condition but that there were new symptoms. Ex. 34. Dr. Gomez tried to clarify her position in a letter of June 27, 2006 (which followed Mr. Bergum's complaint to her about her prior response to WSI), that what she meant by her previous written response was that Mr. Bergum was not disabled by the January 6, 2006, incident, and she clarified that he did "exacerbate" a prior injury. Ex. 40. WSI sought more information from Dr. Gomez regarding Mr. Bergum's then status

by letter of July 25, 2006 (Ex. 41), to which she responded by letter dated August 8, 2006 (Ex. 50). At that time, Dr. Gomez iterated that, as of that time, Mr. Bergum was still requiring an NSAID, pain medication, and muscle relaxants (which she testified he was already prescribed prior to January 6, 2006), that she had recently added Cymbalta (for psychosomatic and physical components of pain), and that he was not back to baseline. *Id.* Her then current assessment was chronic pain syndrome and abdominal distress secondary to multiple medications. *Id.*

[¶ 21] WSI also made specific, detailed findings regarding the opinion and testimony of WSI's examining physician, Dr. Gedan, who conducted an independent medical examination of Bergum in December 2006. Dr. Gedan noted Bergum's extensive history of work-related injury, work restriction, and recurrent episodes of work-related and nonwork-related increased back pain. WSI found Dr. Gedan observed that the January 2004 MRI "indicated degenerative changes at L4–5," that a July 2006 MRI was "substantially similar," and that "there was no evidence of an acute injury, let alone traceable to [the January 2006 work incident]." Dr. Gedan found a normal examination of the lumber spine, noting no spasm or tenderness and a normal range of motion. Dr. Gedan also found no evidence of abnormality, no radiculopathy or nerve root injury, during his neurological examination.

[¶ 22] WSI found Dr. Gedan's diagnosis based upon his December 2006 medical examination of Bergum "was chronic persistent recurrent low back pain with no clinical or objective signs of radiculopathy and that his preexisting condition is chronic recurrent persistent low back pain." (Footnote omitted.) WSI also found:

16. Dr. Gedan opined that the incident of January 6, 2006, did not change the overall course, nature, or objective findings related to his preexisting condition of chronic recurrent persistent low back pain. Further, that there was no objective evidence that the January 6, 2006, incident had any effect on his preexisting lumbar disc degeneration at the L4–5 level based on symptoms, examination, and MRI findings (highlighting normal range of motion of lumbar spine, neurological examination normal without evidence of spinal cord or nerve root dysfunction, and MRI showing no change or structural abnormality related to trauma or injury).

17. Dr. Gedan opined to a reasonable degree of medical certainty that Mr. Bergum's condition (of December 6, 2006) is related to his preexisting condition and that the incident of January 6, 2006, did not substantially accelerate nor substantially worsen the preexisting condition. *See* Ex. 61. Dr. Gedan's opinion remained unchanged as of March 19, 2007, after review of a March 5, 2007, nerve conduction electromyogram (EMG). *See* Ex. 112, *compare* Ex. 110. Dr. Gedan views Mr. Bergum's current complaints as a natural progression of his underlying chronic back pain condition.

[¶ 23] WSI considered the conflicting medical evidence presented and concluded that Bergum failed to establish by a preponderance of the evidence that his January 2006 work activity "substantially accelerated the progression of, or substantially worsened the severity of, his preexisting condition of chronic low back pain." WSI concluded that Bergum at best established that his work activity acted as a trigger to produce symptoms in his preexisting condition, but did not produce a substantial acceleration of the progression or a sub-

stantial worsening of the severity of the preexisting condition.

[¶ 24] Despite Bergum's assertions that Dr. Gedan's opinion is entitled to little weight because he purportedly presumed a substantial worsening of Bergum's pain was not sufficient and that Dr. Gomez's opinion was improperly discounted as not objective medical evidence, we believe these arguments primarily go to the weight and credibility of the expert witnesses. WSI weighs the credibility of medical evidence and resolves conflicting medical opinions, and we will not re-weigh the evidence on appeal. *See Thompson v. Workforce Safety & Ins.*, 2006 ND 69, ¶ 11, 712 N.W.2d 309.

[¶ 25] Bergum also suggests that WSI failed to address the opinion of Bergum's treating neurologist, Dr. Kristen Jessen. In accepting Dr. Gedan's expert opinion, however, WSI specifically found that Dr. Gedan had reviewed the report of the March 2007 nerve conduction electromyogram (EMG), conducted by Dr. Jessen, and that his opinion had remained unchanged, in that he viewed Bergum's "current complaints as a natural progression of his underlying chronic low back pain condition." Further, we note that although Dr. Jessen diagnosed Bergum with chronic low back pain and the presence of polyneuropathy, Dr. Gedan opined that Dr. Jessen's examination did not specifically mention any change in Bergum's condition relating to the January 2006 incident and that Dr. Jessen's neurologic evaluation and EMG findings did not establish any relationship with the January 2006 incident.

[¶ 26] Based upon our review of the record, we conclude that WSI adequately addressed the inconsistencies in the medical opinions and adequately explained the reasons for disregarding medical evidence favorable to Bergum. We conclude that a reasoning mind reasonably could have decided that WSI's findings were proven by the weight of the evidence from the entire record and that the district court did not err in affirming WSI's decision in this case.

IV

[¶ 27] The judgment is affirmed.

[¶ 28] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., and EVERETT NELS OLSON, S.J., concur.

[¶ 29] The Honorable EVERETT NELS OLSON, S.J., sitting in place of CROTHERS, J., disqualified.