Filed 12/2/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 227

Kari Curran, Claimant and Appellee

v.

North Dakota Workforce Safety & Insurance, Appellant

and

MeritCare Health System Respondent

No. 20090260

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Douglas R. Herman, Judge.

REVERSED.

Opinion of the Court by Sandstrom, Justice.

Daniel Earl Phillips, 1129 Fifth Avenue South, P.O. Box 1897, Fargo, N.D. 58107-1897, for claimant and appellee.

Douglas W. Gigler, Special Assistant Attorney General, 1800 Radisson Tower, 201 Fifth Street North, P.O. Box 2626, Fargo, N.D. 58108-2626, for appellant.

Curran v. WSI

No. 20090260

Sandstrom, Justice.

[¶1] Kari Curran had suffered prior off-the-job injuries to her lower back and had degenerative disc disease.  While on the job as a nurse, she bent over to pick up a band-aid from the floor and experienced significant lower back pain.  Because a reasoning mind could have found as WSI did, that picking up the band-aid triggered a preexisting condition but did not substantially accelerate or worsen her condition, we reverse the district court judgment and reinstate the decision of Workforce Safety & Insurance (“WSI”).
(footnote: 1)
 

I

[¶2] In February 2007, Kari Curran submitted a claim to WSI for benefits, reporting that she had sustained a work injury to her mid-to-right lower back while employed as a nurse at MeritCare Health System in Fargo.  While caring for a patient, Curran bent over quickly, twisting down toward the floor, to retrieve a used band-aid.  She testified she experienced sudden lower back pain and had difficulty returning to an upright position because of the pain.

[¶3] Curran’s medical records document chiropractic treatment for her lower spine prior to her work injury, following an automobile accident in February 2004.  She sought treatment from Thomas Solien, D.C., a MeritCare chiropractor.  Dr. Solien diagnosed her with “cervical lumbosacral pain/strain.”  Curran’s medical records state she was experiencing pain in her lower back, which was exacerbated by lifting, sitting, and moving from a sitting to a standing position.  According to her records, her pain level fluctuated throughout the next year and a half.  At times she reported low pain, while at other times the pain became “insidiously more prominent” and she scored her pain level higher.

[¶4] WSI found that in November 2006, Curran made multiple visits to Dr. Solien to treat pain lingering at least in part from a June 2005 motorcycle accident.  Her medical records show she complained of lower back pain, as well as sharp pains when bending and twisting.  Dr. Solien noted there was no improvement in her lower back pain, and her attendant difficulties, such as sitting and sit-to-stand motion, were continuing.  Prior to her February 2007 work injury, WSI found Curran received medical treatment for her back that included one emergency room visit and twelve chiropractic treatments.

[¶5] According to MeritCare records, Curran contacted its human resources department the day after she hurt her back picking up the band-aid.  She was told about filing a WSI claim and whom to see for medical treatment.  That same day, Curran’s medical records reflect she went to MeritCare Occupational Health Center and received treatment from Robert Martino, M.D.  Dr. Martino diagnosed lumbar pain and recommended a course of physical therapy, in addition to various medications.  Dr. Martino released Curran to return to work with restrictions, including no repetitive lifting, no pushing or pulling over ten pounds, and no prolonged standing or walking.  Curran’s records reflect she began receiving physical therapy, during which her chief complaint was lower back pain.  Over the course of the next year, her medical records show that she received numerous medical treatments for her lower back pain from multiple physicians and medical professionals.

[¶6] Curran’s records show she again saw Dr. Martino on February 23, 2007, and he noted her pain had been improving, but she was now experiencing right leg pain with increased aching and burning.  He referred her to the emergency room at her request, where she was seen by Paul Bilstad, M.D.  Dr. Bilstad recorded she had acute back pain and noted her symptoms “could be an early disk.”  In March 2007, an MRI was performed on her lumbar spine, which showed mild disc degeneration and a small ring-shaped tear in one of her discs.

[¶7] Charles Koski, M.D., a neurosurgeon at MeritCare Occupational Health Center, evaluated Curran in March 2007.  In his notes, he recorded the ring-shaped tear in her disc, but did not recommend surgery to repair it.  Dr. Koski also acknowledged WSI was looking into the relationship between Curran’s current symptoms and the 2004 automobile accident, but he opined it “most likely” was an independent event and that Curran’s back pain was “reasonably related” to the tear shown on the MRI.

[¶8] In April 2007, WSI’s medical director, Dr. Luis Vilella, reviewed a portion of Curran’s records and opined that the disc degeneration of her lumbar spine found on the MRI preexisted the original work incident.  He further concluded in his records that the disc degeneration resulted in the disc tear, which produced the pain symptoms she was experiencing.  Dr. Vilella concluded the work incident was a mere trigger of the symptoms, which did not substantially accelerate or worsen the degenerative process.

[¶9] Dr. Solien provided a letter to WSI in September 2007 supporting Curran’s claim for benefits.  He had previously provided her chiropractic treatment for lower back symptoms in March 2005 and in November 2006 for right side lower back pain, particularly with bending and twisting activities.  Dr. Solien noted Curran had preexisting problems with her lumbar spine, but opined the work incident resulted in the disc tear and herniation that produced the ongoing symptoms.

[¶10] In November 2007, Curran’s records show she underwent a discogram of her lumbar spine, which indicated degenerative disc disease and the disc tear.  In February 2008, Curran received treatment in Germany and underwent a disc replacement surgery.  The reports from this procedure indicate her degenerative disc disease was both “chronic” and “severe.”

[¶11] While Curran was in the midst of treating her lower back pain, WSI denied her claim for benefits in April 2007, citing a lack of objective medical evidence supporting a new injury to her lower back.  The April 2007 notice of decision denying benefits stated Curran had a history of back problems dating back to her February 2004 automobile accident, noted she had received chiropractic treatment as recently as November 2006, and relied on Dr. Vilella’s opinion that the workplace incident only triggered a previous condition.  In June 2007, WSI issued a formal order dismissing her claim, and she requested an evidentiary hearing.

[¶12] The issue at the hearing was whether Curran suffered a compensable injury to her lumbar spine while at work.  The administrative law judge (“ALJ”) issued proposed findings of fact, conclusions of law, and an order affirming WSI’s dismissal of Curran’s claim.  WSI adopted the ALJ’s recommended decision as its final order.  WSI’s final order adopted the proposed findings of fact.

[¶13] WSI found it was “apparent that on February 13, 2007, Ms. Curran suffered some sort of back injury at work.”  WSI continued:  “At the same time, however, it is equally obvious from analyzing Ms. Curran’s medical records that when this injury occurred she had a preexisting back injury.”  “The question remains whether Ms. Curran has proved by the greater weight of the evidence that the work injury substantially accelerated or worsened the prior injury, or is it the case that the work injury only triggered symptoms of the preexisting injury.”

[¶14] After comparing her treatment records before and after the work injury, along with consideration of the competing expert opinions, WSI found the greater weight of the evidence did not show that Curran’s work injury substantially accelerated or worsened the severity of her degenerative disc disease or that her work as a nurse substantially contributed to her degenerative disc disease.  WSI therefore concluded Curran was not entitled to benefits.

[¶15] In July 2008, Curran appealed WSI’s final order to the district court.  The district court issued a memorandum opinion and order reversing WSI’s final order.  In reversing WSI’s final order, the district court held its findings were not supported by the preponderance of the evidence.  WSI appeals from the district court’s judgment.

[¶16] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27-05-06, 65-10-01, and 28-32-42.  WSI’s appeal was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28-32-49.  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-32-49.

 

II

[¶17] On appeal from the district court, we review the administrative agency’s decision in the same manner the district court reviewed the decision of the agency.  N.D.C.C. § 28-32-49.  We must affirm an administrative agency order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency’s rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.  “WSI is responsible for weighing the credibility of witnesses and resolving conflicts in the evidence, and we do not make independent findings of fact or substitute our judgment for that of the agency.”  
Tverberg v. Workforce Safety and Ins.
, 2006 ND 229, ¶ 8, 723 N.W.2d 676 (quotations omitted).  “We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.”  
Id.
 (quoting 
Power Fuels, Inc. v. Elkin
, 283 N.W.2d 214, 220 (N.D. 1979)).

A

[¶18] The dispositive issue on appeal is whether a reasoning mind reasonably could have found that Curran did not prove by the weight of the evidence that she suffered a compensable injury to her lumbar spine while picking up a band-aid at work.

[¶19] In seeking WSI benefits, a claimant has the burden of proving by a preponderance of the evidence that the claimant has suffered a compensable injury and is entitled to benefits.  N.D.C.C. § 65-01-11; 
Bergum v. N.D. Workforce Safety & Ins.
, 2009 ND 52, ¶ 11, 764 N.W.2d 178.  “To carry this burden, a claimant must prove by a preponderance of the evidence that the medical condition for which benefits are sought is causally related to a work injury.”  
Id.
; 
see
 
Manske v. Workforce Safety & Ins.
, 2008 ND 79, ¶ 9, 748 N.W.2d 394.

[¶20] Under N.D.C.C. § 65-01-02(10)(b), preexisting injuries are generally excluded from the definition of compensable injury:

10. “Compensable injury” means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.

. . . .

b. The term does not include:

. . . .

(7) Injuries attributable to a preexisting injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition unless the employment substantially accelerates its progression or substantially worsens its severity.

[¶21] On the basis of this statutory language, we have explained that although it is not necessary to show the employment was the sole cause of the injury, to establish a causal connection the claimant must demonstrate his employment was a substantial contributing factor to the disease or injury.  
Bruder v. Workforce Safety & Ins.
, 2009 ND 23, ¶ 8, 761 N.W.2d 588.  In reaching its decision, WSI must weigh any conflicts in medical evidence and explain adequately any reasons for rejecting evidence favorable to the claimant.  
See
 N.D.C.C. § 28-32-46(7); 
Thomas v. Workforce Safety & Ins.
, 2005 ND 52, ¶ 9, 692 N.W.2d 901; 
Barnes v. Workforce Safety & Ins.
, 2003 ND 141, ¶ 20, 668 N.W.2d 290.

WSI has the responsibility to weigh the credibility of medical evidence and resolve conflicting medical opinions.  When confronted with a classic “battle of the experts,” a fact-finder may rely upon either party’s expert witness.  Although WSI may resolve conflicts between medical opinions, the authority to reject medical evidence selectively does not permit WSI to pick and choose in an unreasoned manner.  WSI must consider the entire record, clarify inconsistencies, and adequately explain its reasons for disregarding medical evidence favorable to the claimant.

Huwe v. Workforce Safety & Ins.
, 2008 ND 47, ¶ 10, 746 N.W.2d 158 (citations omitted).

B

[¶22] WSI argues it could have reasonably concluded Curran failed to prove she suffered a compensable work injury to her lumbar spine in February 2007, and the district court, rather than following the proper standard of review, reweighed the evidence in reaching its own conclusion.  WSI also argues it adequately explained why medical evidence favorable to Curran was rejected.

[¶23] In reversing WSI’s order, the district court placed great emphasis on the documented medical opinions presented by Curran.  Dr. Solien, the chiropractor who treated Curran after her 2004 automobile accident and after the February 2007 work incident, believed Curran suffered a disc tear and herniation as a result of her work injury.  JaNyne Aker, D.C., another treating chiropractor, noted in her records that Curran suffered a disc tear and herniation, which constituted a new and separate injury, and this work injury “substantially” changed the character of her preexisting degenerative disc disease.  Dr. Koski, a neurosurgeon, opined that Curran had suffered a disc tear and herniation related to her February 2007 work incident.  Michael Martire, M.D., who also evaluated Curran, opined she had developed right side pain and the acute disc protrusion as a result of the work injury.

[¶24] We remain mindful that it is the province of the agency, not this Court, to weigh the credibility of witnesses and resolve conflicts in the evidence.  
Tverberg
, 2006 ND 229, ¶ 8, 723 N.W.2d 676.  WSI’s final order found that on the basis of Curran’s medical records, it was “apparent” that she suffered “some sort of a back injury” at work in February 2007.  It was “equally obvious,” however, that “when this injury occurred she had a preexisting back injury.”  WSI further found this work injury acted only to “trigger[] symptoms” in Curran’s preexisting degenerative disc disease, but did not substantially aggravate or worsen her condition.  WSI found “[t]he greater weight of the evidence, however, does not show that her work injury substantially accelerated or substantially worsened her preexisting injury.”

[¶25] A reasoning mind could reasonably reach the same conclusion as WSI.  WSI noted the striking similarities between Curran’s symptoms after the February 2007 work incident and the February 2004 automobile accident.  Her numerous chiropractic visits in the interim illustrate the similarities in her ailments and the prolonged pain she was experiencing in her lower back.  She experienced aching and burning in her lower back as well as similar symptoms in her right leg, which were exacerbated by a motorcycle accident in June 2005.  WSI highlighted the fact that Curran was complaining of the same lower back and right side pain following this incident and that she was continuing to have difficulties sitting and moving to stand up.

[¶26] In addition to the symptomatic similarities, WSI found that degenerative disc disease played a major role in Curran’s disability.  While it was Dr. Koski’s opinion that Curran was suffering only from mild disc degeneration, the surgeons who operated on Curran were convinced otherwise.  These surgeons, who performed disc replacement surgery, reported that Curran had advanced degenerative disc disease, which they characterized as “severe” and “chronic.”  WSI concluded, “It is certainly persuasive that the doctors who operated on Ms. Curran and actually saw her lumbar spine attributed her condition and need for surgery to an advanced and progressive degenerative disc disease rather than an acute event.”  It was reasonable for WSI to rely on the opinion of surgeons who operated on Curran.  Likewise, we conclude WSI was reasonable in its conclusions of fact relating to Curran’s condition.

[¶27] WSI also fairly considered the evidence favorable to Curran and adequately explained the reasons for rejecting it.  For example, WSI compared the testimony of Dr. Aker with the records of Curran’s visits to Dr. Solien.  Curran’s complaints following the work injury about lower back pain were similar to those she raised after her automobile accident.  In visits before and after the work injury, Curran complained of sharp pains connected to bending and twisting activities, and Solien also noted tenderness and pain in the lower back (“L5 spinous process”).  WSI drew the reasonable inference that the “degenerative disc disease exhibited in Ms. Curran’s March 2007 MRI was producing symptoms in November 2006 that were consistent with a small annular tear,” thus reinforcing “Dr. Vilella’s opinion that Ms. Curran’s work injury was the natural result of an underlying degenerative disc disease that was getting progressively worse.”

[¶28] WSI considered the opinions of Curran’s other practitioners.  While Curran introduced numerous expert opinions in her favor, WSI logically and methodically explained why each was rejected.  Dr. Koski’s opinion that Curran’s degenerative disc disease was mild was largely rejected because it was contrary to the conclusions of her surgeons, who actually operated on her spine.  WSI found Dr. Solien’s letter was not dispositive, because “whether Ms. Curran’s herniation and annular tear are more related to her work injury or longstanding degenerative back condition” was not addressed.  Similarly, Dr. Martire’s opinion was insufficient because it did not address whether the work injury substantially accelerated or worsened Curran’s preexisting condition.  WSI also rejected an opinion from Ryan Ortman, D.C., because it was “based entirely on an abridged medical history given by Ms. Curran” and “seem[ed] to have been obtained solely in anticipation of litigation.”  These explanations reflect a thoughtful consideration of the evidence and an adequate basis for relying on certain expert opinions rather than others.

C

[¶29] After reviewing the entire record, we conclude WSI adequately explained its reasoning in rejecting medical evidence favorable to Curran.  A reasoning mind could reasonably conclude the weight of the entire record supports WSI’s factual conclusions.  Accordingly, WSI’s conclusions were supported by a preponderance of the evidence, and its order should have been affirmed.

III

[¶30] Any remaining issues and arguments not addressed are unnecessary to our decision.  The district court judgment is reversed, and WSI’s final order denying benefits is reinstated.

[¶31] Dale V. Sandstrom

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

Maring, Justice, dissenting.

[¶32] I respectfully dissent.  I would affirm the district court judgment reversing WSI’s final order, concluding that WSI unreasonably disregarded significant medical evidence favorable to Curran and that a reasoning mind could not reasonably reach the ALJ’s factual findings based on WSI’s medical director’s opinion, in light of other favorable medical evidence.  I would remand the case to WSI for application of N.D.C.C. § 65-05-15, permitting an aggravation award and an appropriate determination of benefits.

[¶33] Our Court has held:  “On appeal, [this Court] determine[s] whether a reasoning mind reasonably could have decided the agency’s findings were proven by the weight of the evidence from the entire record, however, questions of law are fully reviewable.”  
Von Ruden v. North Dakota Workforce Safety & Ins. Fund
, 2008 ND 166, ¶ 8, 755 N.W.2d 885.  The dispositive issue on appeal, therefore, is whether a reasoning mind reasonably could have decided that Curran did not prove by the weight of the evidence from the entire record that she suffered a “compensable injury” to her lumbar spine on February 13, 2007.

[¶34] A claimant must prove by a preponderance of the evidence that the medical condition for which benefits are sought is causally related to a work injury.  
Bergum v. N.D. Workforce Safety and Ins.
, 2009 ND 52, ¶ 11, 764 N.W.2d 178; 
see
 
Manske v. Workforce Safety & Ins.
, 2008 ND 79, ¶ 9, 748 N.W.2d 394.  In establishing this causal connection, the claimant must show the employment “was a substantial contributing factor to the injury, not that [the] employment was the sole cause of the injury.”  
Swenson v. Workforce Safety & Ins. Fund
, 2007 ND 149, ¶ 24, 738 N.W.2d 892 (citing 
Myhre v. North Dakota Workers Comp. Bureau
, 2002 ND 186, ¶ 10, 653 N.W.2d 705).  When rejecting Dr. Solien’s opinion that Curran’s February 2007 work injury caused an annular tear and a small disc protrusion, the ALJ stated Dr. Solien had not addressed the “question of whether Curran’s herniation and annular tear are 
more related to her work injury or longstanding degenerative back condition
.”  (Emphasis added.)  This is a misstatement of the law which only requires that the work was a substantial contributing factor to the injury.

[¶35] A compensable injury “must be established by medical evidence supported by objective medical findings.”  N.D.C.C. § 65-01-02(10).  A claimant must thus prove a “compensable injury” by objective medical evidence, which includes “a physician’s medical opinion based on an examination, a patient’s medical history, and the physician’s education and experience.”  
Swenson
, 2007 ND 149, ¶ 25, 738 N.W.2d 892.  Under N.D.C.C. § 65-01-02(10)(b), preexisting injuries are generally excluded from the definition of “compensable injury”:

10. “Compensable injury” means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.

. . . 

b. The term does not include:

. . . 

(7) Injuries attributable to a preexisting injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition 
unless the employment substantially accelerates its progression or substantially worsens its severity
.

(Emphasis added.)

[¶36] Based on this statutory language, we have explained that “unless a claimant’s employment ‘substantially accelerates’ the progression of, or ‘substantially worsens’ the severity of, a preexisting injury, disease, or other condition, it is not a ‘compensable injury’ when the claimant’s employment merely acts to trigger symptoms in the preexisting injury, disease, or other condition.”  
Bergum
, 2009 ND 52, ¶ 12, 764 N.W.2d 178 (discussing N.D.C.C. § 65-01-02(10)(b)(7)).  Conversely, though, even when injuries are attributable to a claimant’s preexisting injury, disease, or other condition, a claimant may still establish a “compensable injury” by proving the claimant’s employment substantially accelerated the progression of or substantially worsened the severity of the preexisting injury, disease, or condition.  N.D.C.C. § 65-01-02(10)(b)(7); 
see also
 N.D.C.C. § 65-05-15 (“[w]hen a compensable injury combines with a noncompensable injury, disease, or other condition, the organization shall award benefits on an aggravation basis”).

[¶37] “[A]lthough WSI may resolve conflicts between medical opinions, 
the authority to reject medical evidence selectively does not permit WSI to pick and choose in an unreasoned manner
.”  
Elshaug v. Workforce Safety and Ins.
, 2003 ND 177, ¶ 11, 671 N.W.2d 784 (emphasis added).  A treating physician’s opinion is not presumed to have greater weight than those of other examining physicians, 
Swenson
, 2007 ND 149, ¶ 27, 738 N.W.2d 892; 
Myhre
, 2002 ND 186, ¶ 24, 653 N.W.2d 705.  We recognize “a long-term physician-patient relationship may provide the treating doctor with a more comprehensive view of the claimant’s medical history and condition.”  
Swenson
, at ¶ 27.  We have also said “[a]lthough the claimant has the burden of proving the right to . . . benefits, [WSI] must not place itself in a position fully adversary to the claimant.”  
Frohlich v. North Dakota Workers Comp. Bureau
, 556 N.W.2d 297, 301 (N.D. 1996).  Here, the ALJ’s order, adopted as WSI’s final order, found that based on Curran’s medical records, it was “apparent” that Curran suffered “some sort of a back injury” at work on February 13, 2007, and it was “equally obvious” that “when this injury occurred she had a preexisting back injury.”  However, the ALJ further found this February 13, 2007, work injury only acted to “trigger symptoms” in Curran’s preexisting degenerative disc disease.  The ALJ found:  “The greater weight of the evidence, however, does not show that her work injury substantially accelerated or substantially worsened her preexisting injury.”

[¶38] In finding Curran did not prove a “compensable injury,” the ALJ compared Curran’s treatment records before and after her February 13, 2007, work injury.  The ALJ relied on the medical opinion presented by WSI’s medical director, Dr. Vilella, who only reviewed a portion of Curran’s medical records.  Yet, the ALJ rejected Dr. Ortman’s opinion claiming it was based on an abridged medical history given by Curran.  Dr. Vilella opined Curran’s lumbar spine disc degeneration pre-dated the February 2007 work injury and that this disc degeneration led to the annular tear producing Curran’s current pain.  Dr. Vilella concluded that Curran’s February 2007 work injury would have merely “triggered” the symptoms, but did not substantially accelerate or worsen the degenerative process.  The ALJ rejected Curran’s objective medical evidence that she suffered an acute injury of her low back at work, that she substantially aggravated her preexisting low back degeneration, and that her years working as a nurse contributed to her injury.

[¶39] In support of her claim, Curran presented significant objective medical evidence.  Dr. Solien, a chiropractor who treated Curran after her 2004 automobile accident and after the February 13, 2007 work injury, opined that Curran suffered an annular tear and herniation as a result of her work injury.  Dr. Aker, Curran’s treating chiropractor, opined that Curran suffered a disc tear and herniation, which constituted a new and separate injury, and that this work injury “substantially” changed the character of Curran’s preexisting degenerative  disc disease.  Dr. Ortman, another treating chiropractor, also opined that Curran’s work incident caused the current injury and that the injury substantially accelerated any preexisting disease Curran had prior to the work injury.  Dr. Koski, a neurosurgeon, opined that Curran had suffered a disc annular tear and herniation, as well as radiculitis, related to Curran’s February 13, 2007, work incident.  Dr. Martire, who evaluated Curran and performed an EMG revealing nerve conduction problems, opined that Curran had developed right side radiculopathy and the acute disc protrusion as a result of the work injury.

[¶40] Nonetheless, the ALJ rejected all of Curran’s medical evidence of a substantial aggravation and worsening of her preexisting condition, relying on a records review by WSI’s medical director Dr. Vilella and his opinion that the disc herniation was caused by degenerative disc disease.  Although the ALJ specifically discussed his various reasons for disregarding Curran’s favorable medical evidence, “it is insufficient for the ALJ to merely provide any reason for disregarding competent medical testimony about causation.”  
See
 
Swenson
, 2007 ND 149, ¶ 28, 738 N.W.2d 892.  In this case, there is objective medical evidence of an actual work injury (i.e., annular tear at L5-S1) substantially accelerating or worsening Curran’s prior injury or degenerative disc disease, rather than Curran’s employment merely triggering symptoms of pain in a preexisting condition.  
Cf.
 
Bergum
, 2009 ND 52, ¶¶ 21-22, 764 N.W.2d 178; 
Geck v. North Dakota Workers Comp. Bureau
, 1998 ND 158, ¶¶ 10-11, 583 N.W.2d 621.

[¶41] As noted before, WSI medical director Dr. Vilella reviewed some of Curran’s medical records, but not all of them and did not physically examine her.  He testified that Curran suffered a long-standing, ongoing degenerative process of the lumbar spine and that the February 13, 2007, event acted as a trigger 
to produce symptoms 
in the preexisting lumbar degenerative disc disease which was already established in this case.  However, Dr. Vilella’s testimony during the hearing revealed that he neither reviewed Dr. Solien’s pre-injury records for Curran, nor did he review all of Curran’s post-injury records before giving his opinion and testimony:

Q. (MR. PHILLIPS CONTINUING) Dr. Vilella, so it would be fair to say you have not reviewed prior to your opinion any of Miss Curran’s preexisting medical records; is that right?

A. Correct.

. . . .

Q. (MR. PHILLIPS CONTINUING) So prior to your testimony today, you haven’t reviewed any of these subsequent records either?

A. Sir, one more time.

Q. Prior to your testimony today, you haven’t reviewed any of these subsequent records either; is that fair?

A. Subsequent to what date?

Q. Subsequent to your Notepad entry of April 20th, 2007.

A. The only notations that I reviewed subsequent to that date were Aker Chiropractic from May 9th, '07 and, again, on '07 there’s some documentation from what appears to be a surgical procedure that was done in Europe.  Dr. Michael Martire, pain management consultation, that was done on 1-15-08.

Q. So those are the records that Mr. Gigler would have recently sent you after our last hearing; is that right?

A. Yes.

Q. And you never looked at any of the other records that were in the file?

A. No.

[¶42] Based on Dr. Vilella’s failure to review any of Curran’s pre-injury medical records and his review of only some of her post-injury records, the ALJ’s reliance on Dr. Vilella’s opinion to determine whether the work injury substantially accelerated or substantially worsened Curran’s preexisting condition was unreasonable.  Further, Dr. Vilella conceded in his testimony that he could not make a determination when Curran’s annular tear occurred, but only that it was a result of the preexisting disc degeneration.  The ALJ, therefore, cannot reasonably rely on Dr. Vilella’s opinion to determine that other medical opinions that the annular tear occurred when Curran bent down at work were not credible.

[¶43] Based on the medical records, Curran’s medical treatment relating to her back before her February 13, 2007, work injury consisted of one emergency room visit and twelve chiropractic treatments between 2004 and 2006.  This is hardly the medical history of a nurse who has a preexisting annular tear.  After her injury on February 13, 2007, however, the medical records are replete with evidence that Curran has been treated numerous times by numerous different medical providers, both chiropractic and medical, for an annular tear, disc herniation, radiculitis and low back pain.  Further, Curran had disc replacement surgery in Germany in February 2008.

[¶44] Dr. Solien treated Curran before and after her work injury, and opined that there was never a concern of a disc protrusion or annular tear with Curran before her February 13, 2007, injury.  Dr. Solien opined that Curran suffered an annular tear and herniation as a result of her work.  In rejecting Dr. Solien’s opinion that Curran’s February 13, 2007, work injury caused the annular tear and disc protrusion, the ALJ “found” that Dr. Solien’s opinion did not address the “further question” of whether Curran’s annular tear and herniation were “
more related
 to her work injury or longstanding degenerative back disease.”  (Emphasis added.)  The ALJ’s formulation of the analysis here, requiring proof of “but for” causation and proof that injuries are “more related” to either a work injury or a pre-existing condition, misstate the claimant’s burden in establishing a “compensable injury.”

[¶45] This Court has a “long line of cases” explaining that for an injury to be compensable, a claimant need not prove that the worker’s employment is the “sole cause” of an injury, nor that “the work-related injury is a primary cause of the work injury”; rather, “[i]t is sufficient if a work condition is a substantial contributing factor to the disease.”  
Manske
, 2008 ND 79, ¶ 9, 748 N.W.2d 394 (and collected cases therein).  Likewise, as already discussed, where the claimant has a preexisting condition, a claimant may establish a “compensable injury” by proving the claimant’s employment substantially accelerated the progression of or substantially worsened the severity of the preexisting injury, disease, or condition.  N.D.C.C. § 65-01-02(10)(b)(7).  Thus, to have a “compensable injury” under this subsection, the claimant must prove the employment was more than a “mere trigger” of symptoms in the preexisting injury, disease, or condition, but the claimant is not required to prove the employment was the “sole cause” of the accelerated progression or worsened severity of the preexisting injury, disease, or condition.  Therefore, to the extent the ALJ here increased Curran’s burden to establish a “compensable injury,” the ALJ erred in its analysis of Curran’s claim.  Because the ALJ improperly increased the claimant’s burden to establish a “compensable injury” under N.D.C.C. § 65-01-02(10)(b)(7), the ALJ erred as a matter of law.

[¶46] Dr. Aker, another treating chiropractor, wrote a letter to WSI giving her opinion and testified at the hearing regarding Curran’s claim.  Dr. Aker stated her opinion that Curran suffered a disc tear and herniation on February 13, 2007, while performing her duties as a nurse, and that this constituted a new and separate injury.  Dr. Aker opined in her letter to WSI and testified that the disc tear and herniation following Curran’s work injury dramatically and substantially changed the character of Curran’s preexisting minimal degenerative disc disease.

[¶47] Although the ALJ disregarded Dr. Ortman’s opinion based on his conclusion that it was obtained “in the anticipation of litigation,” Dr. Ortman also evaluated Curran and opined that the work incident was an acute event and the cause of Curran’s back problems, that a simple task such as bending over can cause the type of injury that Curran suffered, and that the injury substantially accelerated any preexisting disease that Curran had prior to the work injury.  Dr. Koski opined that Curran’s disc annular tear and herniation were caused by her bending over at work on February 13, 2007.

[¶48] Specifically, Dr. Koski noted on March 27, 2007, that Curran’s motor vehicle accident was most likely a completely independent, separate event from her current problem and that the back pain she was then having was reasonably related to the annular tear noted on the MRI.  On May 1, 2007, Dr. Koski reviewed WSI’s denial of Curran’s claim, discussed the claim with Curran, reviewed past records, and opined:

“In regard to [Curran’s] back pain the temporal sequence that she and her husband report to me would indicate that the incident of February 13th may be correlated to the annular tear.  The annular tear in my opinion did occur in the recent history.  I do not believe that this is a chronic degenerative changes [sic], but rather a[n] acute phenomena.”

WSI rejected Dr. Koski’s opinion because of the opinion of surgeons in Germany, who opined Curran had severe osteochondrosis.  WSI failed to note that the German diagnosis was one year after Dr. Koski first read the MRI of Curran and her condition progressively got worse.

[¶49] Dr. Martire also evaluated and treated Curran, indicating that he reviewed all her medical records before and after the injury.  Dr. Martire performed the EMG which revealed right side nerve conduction problems and opined that Curran had both right side radiculopathy and acute disc protrusion as a direct result of the February 13, 2007, work injury.  WSI rejected Dr. Martire’s opinion because he did not state specifically the acute disc protrusion substantially accelerated or worsened the degenerative disc disease.

[¶50] WSI unreasonably disregarded all the medical opinions that were contrary to the opinion of its own medical director who had not even reviewed all of Curran’s medical records and who is not even board certified in his own specialty of physical medicine.  WSI unreasonably accepted Dr. Vilella’s opinion over those of at least five other physicians and chiropractors.  Curran established she sustained an annular tear due to her work activities, and that the annular tear substantially accelerated or worsened her degenerative disc disease.  The ALJ’s explanation was only that the November 2006 medical records revealed symptoms of pain at L5 that were consistent with an annular tear, which supported Dr. Vilella’s opinion.  I am of the opinion that WSI engaged in unreasoned picking and choosing of opinions in disregard of plain objective medical evidence supporting Curran’s application for benefits and required a heightened burden of proof.  Because a reasoning mind could not reasonably conclude that Curran failed to prove by a greater weight of the evidence that Curran’s work injury substantially accelerated or worsened her preexisting low back condition, I would affirm the district court’s judgment reversing WSI’s final order, and remand to WSI for application of N.D.C.C. § 65-05-15, permitting an aggravation award and an appropriate determination of benefits.

[¶51] Mary Muehlen Maring

Carol Ronning Kapsner

FOOTNOTES
1:
This case predates the enactment of N.D.C.C. § 65-02-22.1.  Therefore, this appeal comes from the final decision of WSI, not the administrative law judge.